STATE OF NORTH CAROLINA, PLAINTIFF v. LESTER DISTANCE AND
TREMAINE LANGLEY, DEFENDANTS

No. COA03-165

(Filed 20 April 2004)

## 1. Criminal Law— joint trial—motion to sever

The trial court did not abuse its discretion in a robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon case by denying defendant's motion to sever his trial from that of his codefendant based on an alleged prior statement by the codefendant providing exculpatory evidence in favor of defendant, because: (1) a bald assertion of hearsay information from an interested witness coupled with the theoretical possibility that the codefendant might testify on defendant's behalf if the trial was severed was insufficient to show that

defendant was deprived of an opportunity to present his defense; and (2) the codefendant's alleged statement is a far cry from the sworn statement made by the codefendant in *State v. Alford,* 289 N.C. 372 (1976).

### 2. Identification of Defendants— in-court—motion to suppress

The trial court did not err in a robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon case by denying defendant's motion to suppress the victim's in-court identification, because: (1) the identification was not inherently incredible given all the circumstances of the victim's ability to view the accused at the time of the alleged crime; and (2) any uncertainty in an in-court identification goes to the weight and not to the admissibility of the testimony.

### 3. Sentencing— aggravating factor—victim very old and physically infirm

The trial court did not err in a robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon case by finding as an aggravating factor under N.C.G.S. § 15A-1340.16(d)(11) that the victim was very old and physically infirm, because the evidence was sufficient to allow the trial court to find that defendants: (1) targeted the video store since the victim was very old and physically infirm; and (2) took advantage of the victim's age (65) and infirmity during the commission of the robbery.

Appeal by defendants from judgments entered 12 April 2002 by Judge Thomas D. Haigwood in Dare County Superior Court. Heard in the Court of Appeals 13 January 2004.

*Attorney General Roy Cooper, by Assistant Attorney General David J. Adinolfi, II, and Assistant Attorney General H. Dean Bowman, for the State.*

*Adrian M. Lapas for defendant-appellant Lester Distance.*

*Richard E. Jester for defendant-appellant Tremaine Langley.*

TIMMONS-GOODSON, Judge.

Lester Distance ("Distance") and Tremaine Langley ("Langley") (collectively, "defendants") appeal their convictions for robbery with a dangerous weapon and conspiracy to commit robbery with a dan-

gerous weapon. For the reasons stated herein, we hold that defendants received a trial free of prejudicial error.

On 30 January 2002, defendants were indicted for robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. The trial court granted the State's pretrial motion to join defendants' trials. On 3 April 2002, Distance filed a motion to sever the trial. At the *voir dire* hearing on the motion to sever, Julia Distance, Distance's wife, testified that Langley told her that "if it came down to it that [Langley] would, if [Langley] had to make a statement or talk to the police about what happened, that [Langley] would make sure that they knew that [Distance] was not the one in there." On 3 April 2002, the trial court denied Distance's motion to sever.

Defendants' trial began on 8 April 2002. The State presented evidence that tended to show the following: On 7 November 2001, Carolyn Simpson ("Simpson") was working alone at Carolina Video, a video rental store in Kitty Hawk, North Carolina. Simpson is sixty-five years old and has had two knee replacement surgeries. At approximately 8:30 p.m. on 7 November 2001, as Simpson prepared to close Carolina Video for the evening, Distance, Langley, and Michael Pratt ("Pratt") entered the store. After the three men browsed the video rental section for approximately five minutes, Pratt left the store. Distance and Langley then approached the front counter of the store and attempted to rent two videos. As another customer entered the store, Distance and Langley walked away from the counter and began browsing the "new release" section of the store. Simpson then waited on the other customer.

After the customer left the store, Distance and Langley ran towards the counter and demanded money from Simpson. Langley pushed Simpson to the floor and stood over her, placing a box cutter to her throat. Langley threatened to cut Simpson unless she gave them the store's money. Langley told Simpson that he and Distance had watched Simpson for ten to fifteen minutes, and that they knew that she had placed money in a bank bag. After Simpson told defendants the bank bag was kept in the bathroom, Langley ordered Simpson to go to the bathroom and retrieve the bank bag. Simpson responded, "I cannot crawl because I have had two knee replacements and I do not have any support on my legs." After Distance retrieved the bank bag, Langley asked Simpson how to open the cash register. Distance then made several failed attempts to open the cash register, prompting Langley to allow Simpson to stand up to show

defendants how to open the cash register. After the cash register was emptied, Langley found Simpson's pocketbook and forced Simpson to give him the money in her wallet. Langley then forced Simpson into the bathroom of the video store, and he and Distance fled the scene with $380 in cash.

At trial, Simpson identified both Distance and Langley as the perpetrators of the robbery. Langley moved to suppress the in-court identification. In a *voir dire* hearing, the State, defense counsel for Distance, and defense counsel for Langley questioned Simpson regarding her identification of defendants. Investigator Eugene McLawhorn of the Kitty Hawk Police Department ("Investigator McLawhorn") also testified at the *voir dire* hearing. Investigator McLawhorn testified that he arranged for Simpson to view a suspect in custody on the night of the robbery. After another investigator brought Distance to the front of the patrol car where Simpson and Investigator McLawhorn were sitting, Simpson told Investigator McLawhorn that she could not determine whether Distance was one of the men who robbed her. Nevertheless, the trial court denied defendants' motions to suppress, concluding that Simpson's in-court identification of defendants was not "inherently incredible, given all the circumstances of [Simpson's] ability to view each of the accused at the time of the alleged crime." The trial court further concluded that "the credibility of the identification evidence is for the jury to weigh."

On 11 April 2002, the jury convicted both defendants for robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. At defendants' sentencing hearing, the trial court found as aggravating factors that Simpson was very old and physically infirm. The trial court also found that Simpson was specifically targeted by defendants because of her age. Defendants appeal.

---

Defendants filed separate appellate briefs to this Court. As an initial matter, we note that the briefs of both defendants fail to support all of their original assignments of error. Pursuant to N.C.R. App. P. 28(b)(6) (2004), the omitted assignments of error are deemed abandoned. Therefore, we limit our present review to those assignments of error properly preserved by defendants for appeal.

Distance assigns error to the trial court's denial of his motion to sever the trial. Langley assigns error to the trial court's denial of his motion to suppress Simpson's in-court identification. Both defend-

ants assign error to the trial court's finding as an aggravating factor that the victim of their crime was very old and physically infirm.

**[1]** Distance first assigns error to the trial court's denial of his motion to sever. Distance argues that defendants' trial should have been severed because a prior statement by Langley provided exculpatory evidence in favor of Distance. We disagree.

Where two defendants are being held accountable for the same crime or crimes, "public policy strongly compels consolidation as the rule rather than the exception." *State v. Nelson*, 298 N.C. 573, 586, 260 S.E.2d 629, 639 (1979), *cert. denied sub nom. Jolly v. North Carolina*, 446 U.S. 929 (1980). Consolidation is "in the discretion of the trial judge, and, in the absence of a showing that a joint trial has deprived a defendant of a fair trial, the exercise of the judge's discretion will not be disturbed on appeal." *State v. Craft*, 32 N.C. App. 357, 360, 232 S.E.2d 282, 284, *disc. review denied*, 292 N.C. 642, 235 S.E.2d 63 (1977). In the case *sub judice*, Distance's wife, Julia Distance ("Julia"), testified during the *voir dire* hearing of Distance's motion to sever. Julia stated that Langley told her that "if it came down to it that [Langley] would, if [Langley] had to make a statement or talk to the police about what happened, that [Langley] would make sure that they knew that [Distance] was not the one in there." Distance argued at the *voir dire* hearing that Julia's testimony suggested that there was exculpatory evidence of Distance's innocence, and that this evidence could not be presented at a consolidated trial because the statement would implicate Langley in the robbery. Distance further argued that "were Langley not at jeopardy, . . . [it] would certainly make it likely that [Langley] would present this evidence."

Distance now argues that *State v. Alford*, 289 N.C. 372, 222 S.E.2d 222, *death penalty vacated sub nom. Carter v. North Carolina*, 429 U.S. 809 (1976), requires severance in the case *sub judice*. In *Alford*, the defendant argued that he was prejudiced by a joint trial with his co-defendant, Carter, because Carter could not be called as a witness to bolster the defendant's alibi defense. *Id.* at 389, 222 S.E.2d at 233. Carter had previously provided the police with a signed statement in which he had admitted that he was involved in the crime and stated that an individual other than Alford had committed the crime. *Id.* at 386-87, 222 S.E.2d at 231. The Court reversed the trial court's order denying the motion to sever, and the Court ordered a new trial for Alford. *Id.* at 389, 222 S.E.2d at 233.

We find the facts of *State v. Paige*, 316 N.C. 630, 343 S.E.2d 848 (1986), more analogous to the case *sub judice*. In *Paige*, our Supreme Court held that the trial court did not err in denying the the defendant's motion to sever. *Id.* at 643, 343 S.E.2d at 857. The only suggestion that Paige's co-defendant Lowery could aid Paige in his defense was an unsupported assertion by Paige's counsel that "suspect Lowery said that Arnold Lorenzo Paige was not present during any crime and could be a witness for Arnold Lorenzo Paige were the joinder not ordered." *Id.* at 641, 343 S.E.2d at 856. The Court noted that Paige made no attempt to corroborate Lowery's statement at the pretrial *voir dire* hearing, and the Court distinguished the facts before it from the facts of *Alford*, finding that Lowery's statement was "a far cry from a signed, sworn statement by a co-defendant admitting his own guilt and identifying some person other than the defendant as the other guilty party." *Id.* at 641-42, 343 S.E.2d at 856.

In the case *sub judice*, Distance failed to provide any evidence to corroborate the testimony of Julia, an interested witness providing hearsay testimony. Furthermore, Distance made no attempt during the *voir dire* hearing or at trial to corroborate his assertion that Langley would have testified on Distance's behalf were their trial severed. This "bald assertion of hearsay information" coupled with the "theoretical possibility" that Langley might testify for Distance if the trial was severed is insufficient to show that Distance was deprived of an opportunity to present his defense. *Id.* at 642, 343 S.E.2d at 856. Furthermore, as in *Paige*, Langley's alleged statement is a far cry from the sworn statement made by the co-defendant in *Alford*. Thus, we conclude that Distance has failed to show that the trial court abused its discretion in consolidating the trial or that the consolidation deprived Distance of a fair trial. Therefore, we hold that the trial court did not err in denying Distance's motion to sever the trial.

[2] Langley first assigns error to the trial court's denial of his motion to suppress Simpson's in-court identification. Langley argues that the in-court identification was impermissibly suggestive. We disagree.

Langley contends that the only reason Simpson identified him was because he was present in court and seated in the defendant's chair. However, in ruling on the motion to suppress, the trial court found that Langley "came within arm['s] reach of [Simpson] at the counter," that Langley "came to be side-by-side or with [Simpson] as she opened the cash register for him," that Simpson "had ample

opportunity to view [Langley's face]," and that while in court five months later, Simpson "recognized [Langley] immediately as being the person[] who held the box cutter to her throat."

An identification procedure is impermissibly suggestive only if the totality of the circumstances surrounding the identification indicate that the procedure resulted in a very substantial likelihood of irreparable misidentification. *State v. Lyszaj*, 314 N.C. 256, 264, 333 S.E.2d 288, 294 (1985). The factors for the court to consider when reviewing an identification include: the opportunity of the witness to view the perpetrator at the time of the crime; the witness's degree of attention; the accuracy of the witness's prior description of the perpetrator; the level of certainty demonstrated by the witness at the identification; and the length of time between the crime and the identification. *Id.* In the case *sub judice*, after making the findings of fact detailed above, the trial court concluded as a matter of law that Simpson's in-court identification of Langley was not "inherently incredible, given all the circumstances of [Simpson's] ability to view each of the accused at the time of the alleged crime."

We conclude that the trial court's findings of fact support its conclusion of law that Simpson's in-court identification of defendants was credible. Langley maintains that Simpson's level of attention was impaired the night the video store was robbed, and that her prior description of what Langley was wearing was incorrect. However, an in-court identification is considered competent where the identification is independent in origin and based upon the witness's observations at the time and scene of the crime. *State v. Miller*, 69 N.C. App. 392, 396, 317 S.E.2d 84, 88 (1984). Furthermore, any uncertainty in an in-court identification goes to the weight and not the admissibility of the testimony. *Id.* Therefore, we hold that the trial court did not err in denying Langley's motion to suppress Simpson's in-court identification.

[3] Both defendants assign error to the trial court's finding as an aggravating factor that the victim was very old and physically infirm. We note as an initial matter that, because neither defendant objected to the trial court's finding at the sentencing hearing, this issue is not properly before this Court. *See* N.C.R. App. P. 10(b)(1) (2004). Nevertheless, pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure, we have elected to examine defendants' arguments, and we conclude that they are without merit. N.C.R. App. P. 2 (2004).

Under Structured Sentencing, the trial court may find as an aggravating factor that the victim was very young or very old, or mentally or physically infirm, or handicapped. N.C. Gen. Stat. § 15A-1340.16(d)(11) (2003). The State bears the burden of proving by a preponderance of the evidence that the aggravating factor exists. N.C. Gen. Stat. § 15A-1340.16(a) (2003). Furthermore, the trial court's finding of an aggravating factor must be supported by "sufficient evidence to allow a reasonable judge to find its existence by a preponderance of the evidence." *State v. Hayes*, 102 N.C. App. 777, 781, 404 S.E.2d 12, 15 (1991).

A defendant may take advantage of a victim's age in at least two ways. *State v. Thompson*, 318 N.C. 395, 398, 348 S.E.2d 798, 800 (1986). First, a defendant may target the victim of a crime because of the victim's age, knowing that the chances of success are greater where the victim is very old. *Id.* Second, a defendant may take advantage of a victim's age during the actual commission of the crime, knowing that the victim is unlikely to effectively intervene or defend him or herself if the victim is very old or physically infirm. *Id.* In the case *sub judice*, defendants argue that the State failed to prove that defendants took advantage of Simpson because of her age and physical infirmity. We disagree.

Simpson testified at trial that she is sixty-five years old, has had two knee replacement surgeries, and has difficulty kneeling and walking. Simpson also testified that as Langley held a razor blade to her throat, he ordered her to retrieve the bank bag. Simpson testified that she responded by telling Langley that she had knee problems and therefore could not crawl to the bathroom to retrieve the bank bag. Simpson further testified that she needed the help of a chair to stand up and show defendants how to open the cash register. Michael Pratt testified that before defendants robbed the store, one of them said that he saw "an old lady in the movie store." Pratt further testified that, as the three walked past the video store, Langley said, "yeah, she's in there by herself. Let's go in there and get her." Simpson also testified that Langley told her after he forced her to the ground that defendants had been watching her for ten to fifteen minutes before they entered the store.

We conclude that the evidence was sufficient to allow the trial judge to find that defendants targeted the video store because Simpson was very old and physically infirm, and that defendants took advantage of Simpson's age and infirmity during the commission of the robbery. Therefore, we hold that the trial court did not err in

finding as an aggravating factor that the victim was very old and physically infirm.

No error.

Judges WYNN and McCULLOUGH concur.