STATE OF NORTH CAROLINA
v.
ESTIL TALLEY.
No. COA07-89
Court of Appeals of North Carolina.
Filed November 20, 2007
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Robert M. Curran, for the State.
Crumpler, Freedman, Parker & Witt, by Vincent F. Rabil, for Defendant-Appellant.
McGEE, Judge.
Estil Talley (Defendant) pleaded guilty to twenty-one counts of obtaining property by false pretenses. Two of the counts alleged the taking of property worth over $100,000.00 dollars and thus were Class C felonies. At the plea hearing, the State asked the following of defense counsel: "Does . . . Defendant first stipulate to the factual basis?" Defense counsel stated: "[Defendant] does." The State then proceeded to recite the evidence, and Defendant did not object.
Given the posture of this case, an exhaustive recitation of the facts is unnecessary. However, the State's summary tended to show the following: Detective Oliver received information that some time between 1994 and 1996, Defendant started a "corporation"called Wilkes Funeral Directors with his friend, Christopher Leupold. "[T]he function of the corporation was to buy small businesses[,] in particular funeral homes[,] and to resell them for large profits." Defendant's son, Danny Talley, who was a confidential informant, stated that Defendant got Danny Talley involved in soliciting funds for the "corporation" in 1995. Moreover, Defendant admitted to Detective Oliver that "he [had] approached Danny Talley . . . to join the corporation."
Detective Oliver interviewed several people who had been approached by Danny Talley to invest in the "corporation." These people stated that they had known Danny Talley and Defendant for many years, and that they loaned money to Danny Talley to use in the "corporation." Danny Talley had promised them generous profits in return for their investments. Defendant also admitted that he had personally borrowed money for the "corporation" from seven or eight different people. Defendant said that all of the money he and Danny Talley borrowed was given to Christopher Leupold. Although many of the people from whom Defendant and Danny Talley borrowed money asked for their money to be returned, Danny Talley made several excuses for failing to do so, including "the September 11th attack, the anthrax scare and lawyer delays." Although some of these people were repaid in part, most of them were not repaid.
Detective Oliver checked the Secretary of State's records on 9 June 2003 "for any companies using the name Wilkes Funeral Directors as well as registered agents of [Christopher] Leupold, Estil Talley, and Danny Talley. The records check failed to show the existence of any corporation using the name Wilkes Funeral Directors or any of those three individuals listed as registered agents."
At the conclusion of the hearing, the trial court consolidated all of the charges into one of the two Class C felonies, and stated as follows: "I will find aggravating factor Number 1, Number 2, and Number 14." However, the trial court only checked aggravating factor Number 14 on the form entitled, "Felony Judgment Findings of Aggravating and Mitigating Factors." The trial court also found three mitigating factors and determined that the aggravating factors outweighed the mitigating factors.
The trial court sentenced Defendant to an aggravated term of 92 months to 120 months in prison on 7 June 2004 and ordered that Defendant pay restitution in the amount of $578,519.65. Defendant did not appeal. However, Defendant filed a petition for writ of certiorari on 3 July 2006, which our Court allowed on 21 July 2006 "for the purpose of reviewing the judgment[] entered 7 June 2004 by Judge Richard L. Doughton." Our Court stated: "The appeal shall be limited to issues that are appealable of right pursuant to N.C. Gen. Stat. § 15A-1444(a1) and (a2)."

I.
Defendant first argues the trial court erred by finding that the offense involved the actual taking of property of great monetary value where this aggravating factor was an element of the offense for which sentence was imposed, in violation of N.C. Gen. Stat. § 15A-1340.16(d). N.C. Gen. Stat. § 15A-1340.16(d) (2003)provides, in relevant part, that "[e]vidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation, and the same item of evidence shall not be used to prove more than one factor in aggravation."
Our Court rejected a similar argument in State v. Hughes, 136 N.C. App. 92, 524 S.E.2d 63 (1999), disc. review denied, 351 N.C. 644, 543 S.E.2d 878 (2000), superseded by statute on other grounds, N.C. Gen. Stat. § 15A-1340.34 (2005), where the defendant entered a plea of no contest to the charge of felony accessing computers, and the trial court found as an aggravating factor that the offense involved damage causing great monetary loss. Id. at 95-96, 524 S.E.2d at 65. The defendant argued the trial court erred because the aggravating factor was based on evidence that was necessary to prove an element of the offense charged. Id. at 99, 524 S.E.2d at 67. Our Court quoted the felony accessing computers statute as follows:
"A violation of this subsection is a Class G felony if the fraudulent scheme or artifice results in damage of more than one thousand dollars ($1,000), or if the property or services obtained are worth more than one thousand dollars ($1,000). Any other violation of this subsection is a Class 1 misdemeanor."
Id. at 99, 524 S.E.2d at 67-68 (quoting N.C. Gen. Stat. § 14-454 (Cum. Supp. 1998)). Our Court held that "[t]he amount of money involved in the offense is not an element of [N.C.G.S. §] 14-454. Instead, the money amount comes into play only at the time of sentencing." Id. at 99, 524 S.E.2d at 67.
Likewise, in the present case, the amount of money involved in the offense of obtaining property by false pretenses is not an element of that offense. After defining the offense of obtaining property by false pretenses, N.C. Gen. Stat. § 14-100 (2003) continues:
If the value of the money, goods, property, services, chose in action, or other thing of value is one hundred thousand dollars ($100,000) or more, a violation of this section is a Class C felony. If the value of the money, goods, property, services, chose in action, or other thing of value is less than one hundred thousand dollars ($100,000), a violation of this section is a Class H felony.
Accordingly, like the statute at issue in Hughes, the amount of money involved in the offense of obtaining property by false pretenses "comes into play only at the time of sentencing."See Hughes, 136 N.C. App. at 99, 524 S.E.2d at 67.
Our decision is further supported by State v. Thompson, 64 N.C. App. 485, 307 S.E.2d 838 (1983), cert. denied, 313 N.C. 513, 329 S.E.2d 399 (1985), where the issue was whether, under the Fair Sentencing Act, "the fact that [the] defendant took $4,700.00 was evidence necessary or essential to prove an element of the offense of robbery with firearms." Id. at 490-91, 307 S.E.2d at 842. Our Court recognized that the offense of robbery with a firearm "'is complete if there is an attempt to take property by [the] use of firearms or other dangerous weapons.'" Id. at 491, 307 S.E.2d at 842 (quoting State v. Black, 286 N.C. 191, 194, 209 S.E.2d 458, 460 (1974)). Our Court held as follows:
Thus, all that is necessary to prove the offense is that an attempt was made to rob by the use of a firearm or other dangerous weapon. Since the offense does not requireproof that money was actually taken, the taking of the large sum of money was properly considered as an aggravating factor[.]
Id. Our Supreme Court followed Thompson in State v. Barts, 316 N.C. 666, 343 S.E.2d 828 (1986), where our Supreme Court recognized:
The appellate courts of this [S]tate have previously held that since the crime of armed robbery does not require proof that property was actually taken-the mere attempt to take property by use of a firearm or other deadly weapon is sufficient-this aggravating factor may be properly found in armed robbery cases.
Id. at 694, 343 S.E.2d at 846 (citing Thompson, 64 N.C. App. 485, 307 S.E.2d 838).
Although Thompson and Barts were decided under the Fair Sentencing Act, that Act contained a provision almost identical to the provision of the Structured Sentencing Act at issue in the present case. Compare N.C. Gen. Stat. § 15A-1340.4(a)(1) (Cum. Supp. 1981) (providing that "[e]vidence necessary to prove an element of the offense may not be used to prove any factor in aggravation, and the same item of evidence may not be used to prove more than one factor in aggravation"), with N.C.G.S. § 15A-1340.16(d) (providing that "[e]vidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation, and the same item of evidence shall not be used to prove more than one factor in aggravation."). Accordingly, we find Thompson and Barts persuasive.
In the present case, the offense of obtaining property by false pretenses, like the offense of robbery with a firearm at 7 issue in Thompson and Barts, does not require proof that property was actually taken. Rather, N.C.G.S. § 14-100 provides:
If any person shall knowingly and designedly by means of any kind of false pretense whatsoever . . . obtain or attempt to obtain from any person within this State any money, goods, property, services, chose in action, or other thing of value with intent to cheat or defraud any person of such money, goods, property, services, chose in action or other thing of value, such person shall be guilty of a felony[.]
N.C.G.S. § 14-100 (emphasis added); see also State v. Cronin, 299 N.C. 229, 235, 262 S.E.2d 277, 282 (1980) (recognizing that "[N.C.G.S. § 14-100] now includes in the definition of the crime an attempt to obtain something of value with an intent to defraud. Formerly, to commit the crime [a] defendant must have actually obtained something of value as a result of his false pretense."). Therefore, in the present case, because the offense of obtaining property by false pretenses does not require proof of an actual taking, "the taking of the large sum of money was properly considered as an aggravating factor[.]" See Thompson, 64 N.C. App. at 491, 307 S.E.2d at 842. Thus, Defendant's argument lacks merit, and we overrule the assignments of error grouped under this argument.

II.
Defendant also argues, for preservation purposes, that the trial court erred by finding three aggravating factors without submitting the aggravating factors to a jury to be found beyond a reasonable doubt, in violation of Blakely v. Washington, 542 U.S. 296, 159 L. Ed. 2d 403, reh'g denied, 542 U.S. 961, 159 L. Ed. 2d 851 (2004). However, we hold that Defendant is not entitled to Blakely review. In State v. Coleman, ___ N.C. App. ___, 640 S.E.2d 784, disc. review denied, 361 N.C. 571, ___ S.E.2d ___ (2007), our Court recently held that "defendants entitled to Blakely review are only those whose cases were pending on direct review or were not yet final as of the date the Blakely opinion was issued." Id. at ___, 640 S.E.2d at 786 (citing State v. Hasty, ___ N.C. App. ___, ___, 639 S.E.2d 94, 96 (2007)). "[A] case is 'final' when '"a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for petition for certiorari elapsed or a petition for certiorari finally denied."'" Id. at ___, 640 S.E.2d at 786 (citations omitted). Moreover, "the granting of a petition for writ of certiorari does not alter the determination of when a case becomes final." Id. at ___, 640 S.E.2d at 786 (citing Hasty, ___ N.C. App. at ___, 639 S.E.2d at 96).
In the present case, the trial court entered its judgment on 7 June 2004, and Defendant did not perfect an appeal from this judgment. Accordingly, Defendant's time to file an appeal expired on 21 June 2004, or fourteen days after entry of judgment. See N.C.R. App. P. 4(a) (providing that in order to preserve the right to appeal, a defendant must either give oral notice of appeal at trial or file a written notice of appeal within fourteen days of entry of judgment). Accordingly, Defendant's case was final, although only by a few days, prior to the 24 June 2004 decision in Blakely. Moreover, even though we granted Defendant's 3 July 2006 petition for writ of certiorari, Defendant's case was still final prior to the Blakely decision. See Coleman, ___ N.C. App. at ___, 640 S.E.2d at 786 (citing Hasty, ___ N.C. App. at ___, 639 S.E.2d at 96) (recognizing that "the granting of a petition for writ of certiorari does not alter the determination of when a case becomes final."). Therefore, Defendant is not entitled to Blakely review, and we overrule the assignments of error grouped under this argument.

III.
Defendant also argues there was insufficient evidence to support two of the aggravating factors found by the trial court. N.C. Gen. Stat. § 15A-1340.16(d) (2003) sets forth, in part, the following aggravating factors:
(1) The defendant induced others to participate in the commission of the offense or occupied a position of leadership or dominance of other participants.
(2) The defendant joined with more than one other person in committing the offense and was not charged with committing a conspiracy.
Although the trial court failed to check the appropriate boxes on the form entitled "Felony Judgment Findings of Aggravating and Mitigating Factors," it is clear from the transcript that the trial court found these aggravating factors. This omission was merely a clerical error which the trial court shall correct on remand. See State v. Sellers, 155 N.C. App. 51, 59, 574 S.E.2d 101, 106-07 (2002); State v. Gell, 351 N.C. 192, 218, 524 S.E.2d 332, 349, cert. denied, Gell v. North Carolina, 531 U.S. 867, 148 L. Ed.2d 110 (2000).
Prior to Blakely, "[t]he State [bore] the burden of proving by a preponderance of the evidence that the aggravating factor exist[ed]." State v. Distance, 163 N.C. App. 711, 718, 594 S.E.2d 221, 226 (2004) (citing N.C. Gen. Stat. § 15A-1340.16(a) (2003)). Accordingly, because Blakely did not apply at the time Defendant was sentenced, we must determine whether the trial court's findings of the aggravating factors were "supported by 'sufficient evidence to allow a reasonable judge to find [their] existence by a preponderance of the evidence.'" Id. (quoting State v. Hayes, 102 N.C. App. 777, 781, 404 S.E.2d 12, 15 (1991)).
Defendant argues "[t]he evidence summarized by the [State] . . . or narrated by various victims in unsworn statements to the [trial] court . . . was insufficient to support" the challenged findings. Defendant relies upon State v. Canady, 330 N.C. 398, 410 S.E.2d 875 (1991), where our Supreme Court recognized that "a statement of the prosecutor is not sufficient evidence to support the finding of an aggravating factor although there is no objection to the statement." Id. at 400, 410 S.E.2d at 877.
However, in the present case, unlike in Canady, Defendant stipulated to the factual basis for the plea. "If opposing counsel stipulates to a statement it may be used to support the finding of an aggravating factor." State v. Mullican, 329 N.C. 683, 685, 406 S.E.2d 854, 855 (1991) (citing State v. Swimm, 316 N.C. 24, 340 S.E.2d 65 (1986)). In Mullican, our Supreme Court recognized that "[w]hen the prosecuting attorney said he would summarize the State's evidence with the permission of the defendant, this was an invitation to the defendant to object if he had not consented. [The defendant] did not do so." Id. at 686, 406 S.E.2d at 855. Following the State's summary, the defendant's attorney in Mullican gave a statement that was consistent with the State's summary, and concluded by saying that "'[o]f course that is not any excuse for [the defendant] doing this.'" Id. Our Supreme Court held that "the statement of the prosecuting attorney considered with the statement of the defendant's attorney shows that there was a stipulation that the prosecuting attorney could state what the evidence would show." Id. at 686, 406 S.E.2d at 856.
In the present case, prior to its recitation of the evidence, the State asked the following of defense counsel: "Does . . . Defendant first stipulate to the factual basis?" Defense counsel stated: "[Defendant] does." The State then recited the evidence, and Defendant did not object. Thus, Defendant in the present case explicitly stipulated that the State could summarize what the evidence would show. Following the State's recitation, defense counsel asked the State several questions and then stated that the defense had no evidence. Defense counsel then stated as follows:
Your Honor, this is a regrettable course of conduct. You have had an opportunity to see [Defendant] and to observe his demeanor and see how he responds to the Court's questions. He is 71 years old. He is married. His wife is with him here. She is distraught as you might imagine that this has come to pass. [Defendant] has one son, Danny Talley, who has two children, two grandsons.
[Defendant] and his family were raised in this area and as you've heard from the summary of the evidence, he is a person who was known in the community. [Defendant] and his brother both have been involved in the funeral home business off and on. His brother 
COURT: [Defendant] is the one who probably knew these folks well enough to get them to give money; is that correct?
[DEFENSE COUNSEL]: [Defendant] and Danny Talley would have known them that well. I assume Mr. Leupold did not know those folks. And, in fact, it appears that Mr. Leupold did not make the contact with the persons from whom the money was solicited. . . . [Defendant] would have testified in a trial in the matter that Mr. Leupold solicited him to participate. And that Mr. Leupold was the driving force behind this.
Nevertheless, [Defendant] understands as indicated in his plea that his role in this matter is full and complete and he has to take responsibility for his actions. [Defendant] made a statement immediately when he was confronted. [Defendant] has, with his own resources, paid back $27,000, not a significant percentage of the loss, but in the scheme of things from a man of modest means to begin with, a significant attempt at making some restitution.
In addition, [Defendant] would testify if the case were tried that he had invested over $50,000 of his own money, not including the $27,000 which he has made in restitution. [Defendant] understands that the net result of all of this, no matter what I say, is that he is going to serve an active prison sentence for his involvement in this matter.
Defense counsel's statement did not materially conflict with the State's summary of the facts. Defense counsel stated that Defendant's conduct was "regrettable" and further stated that Defendant "understands as indicated in his plea that his role in this matter is full and complete and he has to take responsibility for his actions." Based upon defense counsel's explicit stipulation, and defense counsel's further statements, we hold that Defendant stipulated to the State's recitation of the evidence. See Mullican, 329 N.C. at 686, 406 S.E.2d at 856. Therefore, such evidence could be used to support the trial court's findings of aggravating factors. See id. at 685, 406 S.E.2d at 855.
It is also clear that the trial court's findings were supported by the evidence as summarized by the State. As to the aggravating factor under N.C.G.S. § 15A-1340.16(d)(1), our Court has made clear, when reviewing the same provision under the Fair Sentencing Act, that since the provision "is stated in the disjunctive, proof of either type of conduct, by the preponderance of the evidence, is sufficient to support the finding of an aggravating factor." State v. San Miguel, 74 N.C. App. 276, 278, 328 S.E.2d 326, 328 (1985). In the present case, even assuming arguendo that there was insufficient evidence that Defendant occupied a position of leadership or dominance, there was sufficient evidence that Defendant induced others to participate. According to the State's summary, Detective Oliver received information from a confidential informant, Danny Talley, that Defendant got Danny Talley involved in soliciting funds for the "corporation." According to Danny Talley's statement, "[Defendant] solicited [Danny Talley] into this fraudulent business and asked [Danny Talley] to go out and make the loans." Moreover, Defendant admitted to Detective Oliver that "he [had] approached Danny Talley . . . to join the corporation."
As to the aggravating factor under N.C.G.S. § 15A-1340.16(d)(2), it is clear from the State's summary of the evidence that Defendant joined with Christopher Leupold and Danny Talley in committing the offenses. Defendant was not charged with conspiracy. Therefore, the trial court's findings of aggravating factors were "supported by 'sufficient evidence to allow a reasonable judge to find [their] existence by a preponderance of the evidence.'" Distance, 163 N.C. App. at 718, 594 S.E.2d at 226 (quoting Hayes, 102 N.C. App. at 781, 404 S.E.2d at 15). We overrule these assignments of error.

IV.
Defendant has also filed a motion for appropriate relief and motion for stay of appellate proceedings. Defendant argues, inter alia, that he was incapable of proceeding at the time he entered his guilty plea and that he received ineffective assistance of counsel. Pursuant to N.C. Gen. Stat. § 15A-1418(b) (2005),
[w]hen a motion for appropriate relief is made in the appellate division, the appellate court must decide whether the motion may be determined on the basis of the materials before it, or whether it is necessary to remand the case to the trial division for taking evidence or conducting other proceedings.
In State v. Verrier, 173 N.C. App. 123, 617 S.E.2d 675 (2005), our Court stated: "Mindful that it is more within the province of a trial court rather than an appellate court to make factual determinations, we conclude that the materials in the instant case are insufficient to enable us to render a decision regarding [the] defendant's motion." Id. at 132, 617 S.E.2d at 681. Accordingly, our Court dismissed the motion without prejudice to the defendant to file a new motion for appropriate relief in the trial court. Id.; see also State v. Hurst, 304 N.C. 709, 712, 285 S.E.2d 808, 810 (1982) (per curiam) (holding that "[w]hile [N.C.G.S. § 15A-1418(b)] suggests that the motion be remanded to the trial court for hearing and determination, we think that the better procedure in this case is to dismiss the motion and permit [the] defendant, if he so desires, to file a new motion for appropriate relief in the superior court.").
Likewise, in the present case, the materials before us are insufficient to enable us to render a decision on Defendant's motion for appropriate relief. Accordingly, we dismiss the motion without prejudice to Defendant to file a motion for appropriate relief in the trial court. We deny Defendant's motion for stay of appellate proceedings.
Affirmed and remanded for correction of clerical error.
Judges TYSON and ELMORE concur.
Report per Rule 30(e).