STATE OF NORTH CAROLINA v. EDWARD WALTER SMITH, DEFENDANT

No. COA09-235

(Filed 5 January 2010)

**1. Evidence— officer's report—waiver of objection—defendant requested second reading of report**

Defendant lost the benefit of his objection to a detective reading to the jury a report of her 9 December 2005 interview with the minor victim in a multiple statutory rape, multiple statutory sex offense, and sex offense in a parental role case based on defense counsel's request of a second reading of the report.

**2. Evidence— report—testimony about sexual conduct—failure to provide limiting instruction—plain error analysis**

Even assuming *arguendo* that it was error for the trial court to fail to give a limiting instruction regarding the minor victim's testimony regarding sexual conduct in Florida, there was no plain error given the overwhelming evidence of defendant's guilt of each offense charged including defendant's own admissions of the sexual contact and the fact he fathered the minor victim's child and a second baby that was aborted.

**3. Sexual Offenders— lifetime satellite-based monitoring—failure to order risk assessment and follow statutory procedures**

The trial court erred by ordering defendant to enroll in lifetime satellite-based monitoring (SBM) without ordering a risk assessment and following the other procedures required by N.C.G.S. § 14-208.40A, and the case is remanded for a new SBM hearing.

Appeal by defendant from judgments entered on or about 10 June 2008 by Judge J. Marlene Hyatt in Superior Court, Transylvania County. Heard in the Court of Appeals 2 September 2009.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Catherine M. (Katie) Kayser, for the State.*

*Brian Michael Aus, for defendant-appellant.*

STROUD, Judge.

Edward Walter Smith ("defendant") appeals from his convictions for eight counts of statutory rape, six counts of statutory sex offense,

two counts of sex offense in a parental role, and order to enroll in life-time satellite-based monitoring upon completion of his sentence. Defendant presents three issues for this Court's review: whether the trial court erred by (1) allowing Detective Smith's report to be read to the jury; (2) not providing a limiting instruction regarding testimony about prior sexual conduct between the victim and defendant; and (3) ordering defendant to enroll in lifetime satellite-based monitoring. For the following reasons, we conclude that the defendant failed to preserve his objection to the reading of Detective Smith's report to the jury, and the trial court did not err by not giving a limiting instruction, but we reverse the trial court's lifetime satellite-based monitoring order and remand for further proceedings.

## I. Background

The State's evidence tended to show that the alleged victim in this case, Mary[1] was born on 10 August 1985 and is defendant's adopted daughter. Mary went to live with defendant at his home in Florida when she was eight years old, and she was adopted by defendant when she was eleven years old. Mary testified that defendant's first sexual contact with her happened when she was on the couch watching cartoons and defendant came to the living room, pulled her underwear to the side, and performed oral sex on her. She was eleven or twelve years old at the time. About a year later, defendant began having sexual intercourse with Mary. Mary became pregnant when she was fourteen years old and defendant was around fifty or fifty-one years old. When Mary told defendant about the pregnancy, he told her that she was going to have to make up a story about the identity of the father. Mary told her step-mother that the father was "somebody else[,]" but Mary stated that "[t]he father wasn't somebody else, it was my adopted father." Defendant's sexual contact with Mary did not stop after Mary became pregnant. After Mary talked to police and her school principal in Florida about her pregnancy, defendant moved the family to Black Forest Campground in Transylvania County, North Carolina, around March of 2000. Mary was still pregnant and fourteen years old when the family moved to North Carolina. The family lived in an Airstream trailer during their time at Black Forest Campground. Defendant had Mary perform oral sex on him and he continued to have intercourse with Mary, throughout her whole pregnancy, whenever her adopted mother went to work. Defendant told Mary if she ever told her adoptive mother about defendant's actions, "it would

---

1. We will refer to the victim by the pseudonym Mary to protect the victim's identity and for ease of reading.

break her heart" and "would break up the family" and "they would take [Mary's] daughter away from [her]." Mary gave birth during the summer of 2000, but the sexual contact with defendant continued several times a week. Defendant moved the family from Black Forest Campground to a house in Mel Glen in the Pisgah Forest. Defendant threatened to hurt Mary's daughter in some way if Mary did not have sex with defendant and Mary felt that defendant was going to "get at [her] somehow if [she] didn't give in." The sexual contact continued through 2000 and 2001, until defendant got Mary pregnant again at age sixteen. Defendant told her that she would have to get an abortion because Mary was not dating and "there was nobody to pin it on." Mary stated that defendant "had already decided for me that I was going to have [an abortion], and there was no other way out." Defendant drove Mary to Asheville for the abortion. After the abortion, Defendant continued to have oral sex and intercourse with Mary several times a week. When Mary was twenty years old, she decided to leave defendant's home because she "wanted it to stop and . . . wanted to protect [her] daughter." Mary told her priest what had happened and went to Safe House, a center for physically, emotionally or sexually abused women. Mary also spoke with T.C. Townsend, a volunteer at Safe House. Mary took out a Chapter 50B domestic violence protective order against defendant in Transylvania County. Defendant testified at the domestic violence hearing. An audio recording of his testimony at that hearing was admitted into evidence and played for the jury.

Mary also spoke with Detective Rita Smith of the Transylvania County Sheriff's Department on 9 December 2005 and told Detective Smith about the sexual activity between her and defendant. As a result of this conversation, Detective Smith prepared a report, which is the subject of defendant's first argument on appeal and will be discussed in more detail below. After speaking with Mary, Detective Smith spoke with defendant for approximately an hour on 27 December 2005 at the Transylvania County Sheriff's Department. Defendant was told that he was not under arrest and was free to leave at any time. Defendant told Detective Smith that sexual activity began between himself and Mary when she was thirteen years old and continued until around 8 December 2005. Defendant stated that the sexual activity began when defendant and Mary were at his brother's house in Florida and Mary began wrestling with him. Defendant stated that Mary began "humping" on him; defendant stated that their clothes were on. Defendant then stated that Mary "French kissed" him and he said "he was done for." Defendant claimed that after he

began having sex with Mary, she "wanted it all the time." Defendant told Detective Smith that Mary was pregnant at 14 years old; the family moved to Black Forest Campground and then Mary and defendant's child was born at the Transylvania Community Hospital; he could not remember Mary and him having sex while Mary was pregnant, but he was sure they did; the sex continued after Mary and defendant's child was born; Mary was pregnant again at 16 years old but Mary had an abortion in Asheville; Mary was the one who wanted the abortion, while he did not want the abortion; he knew that the unborn child was a little boy; and the family was living in Mel Glenn when the abortion happened. Defendant told Detective Smith that Mary's daughter was his biological child and when Mary became pregnant again at age sixteen that he was sure the baby was also his. Defendant did not present any evidence at trial.

On 30 December 2005, warrants for defendant's arrest were issued charging him with three counts of statutory rape and two counts of sex offense in a parental role. On 11 December 2006, defendant was indicted on four counts of statutory rape and two counts of sex offense in a parental role. On 28 April 2008, defendant was indicted on six additional counts of statutory sex offense and four additional counts of statutory rape. Defendant was tried during the 9 June 2008 Session of Criminal Session of Superior Court, Transylvania County before the Honorable J. Marlene Hyatt, and a jury found him guilty of all charges. On 10 June 2008, defendant was sentenced to eight active prison terms for his convictions, to run consecutively, for a total of 1488 to 1858 months of imprisonment. The trial court also ordered defendant to enroll in lifetime satellite-based monitoring upon completion of his sentence. Defendant gave notice of appeal on 20 June 2008.

## II. Detective Smith's Report

**[1]** Defendant first contends that the trial court erred by allowing Detective Smith to read to the jury the report of her 9 December 2005 interview with Mary, when the report could properly be used only to refresh Detective Smith's recollection. Detective Smith took notes from this interview and typed up the report as part of the investigation. Detective Smith had retired by the time defendant was tried in 2008 and indicated to the prosecutor that reading the report would refresh her recollection in the following exchange:

[The State]: And can you tell us what she told you?

[Detective Smith]: I can. May I read this?

[The State]: If it would refresh your recollection.

[Detective Smith]: It would.

[Defense Counsel]: I'm going to object to her reading it. If it will refresh her recollection to testify, but I would object to her reading the document.

[The Court]: Overruled.

[The State]: Go ahead.

Detective Smith was then allowed to read to the jury most of the report from her 9 December 2005 interview with Mary. However, on cross-examination, defense counsel asked Detective Smith to read the same report to the jury in the following exchange:

[Defense Counsel]: And then you also interviewed [Mary] on December 9th; is that right?

[Detective Smith]: Yes.

[Defense Counsel]: And in that interview of December 9th did you make notes like you did on Mr. Smith's interview?

[Detective Smith]: Yes.

[Defense Counsel]: And did you transcribe those onto any documents?

[Detective Smith]: Yes.

[Defense Counsel]: Do you have that with you?

[Detective Smith]: I do.

[Defense Counsel]: Could you read that to the jury, please?

Detective Smith again read the same report from her 9 December 2005 interview with Mary. As defense counsel had requested Detective Smith to read this report again, defense counsel did not object to this second reading of the report. "Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." *State v. Johnson,* —— N.C. App. ——, ——, 667 S.E.2d 313, 315 (2008) (citation and quotation marks omitted). As defense counsel requested the second reading of the report, defendant lost the benefit of his objection to Detective Smith's reading of her report to the jury. This argument is overruled.

### III. Jury Instructions

**[2]** Defendant next contends that the trial court committed plain error by not providing a limiting instruction regarding Mary's testimony about sexual conduct between Mary and defendant when the family lived in Florida, that Mary became pregnant in Florida, and that Mary had informed her principal and police in Florida about the sexual conduct. All of the offenses for which defendant was charged or convicted occurred when Mary was age 14 or older and occurred in North Carolina. The defendant concedes that he did not request a limiting instruction regarding Mary's testimony about sexual contact by defendant prior to their move to North Carolina and this assignment of error should be reviewed for plain error pursuant to N.C. R. App. P. 10(a)(4).

For defendant's argument that the trial court committed plain error to succeed, defendant must show that

> the claimed error is a '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' or . . . where it can be fairly said 'the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.'

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted). "In order to prevail under a plain error analysis, defendant must establish not only that the trial court committed error, but that absent the error, the jury probably would have reached a different result." *State v. Steen*, 352 N.C. 227, 269, 536 S.E.2d 1, 25-26 (2000) (citation and quotation marks omitted), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001).

Even assuming *arguendo* that it was error for the trial court to not provide a limiting instruction regarding Mary's testimony regarding events in Florida, we conclude that it did not rise to the level of plain error. The record in the case *sub judice* contains overwhelming evidence of defendant's guilt of each offense charged, including defendant's own admissions to Detective Smith regarding the details and timing of his sexual contact with Mary and the fact that he fathered her child and her baby which was aborted as well as defendant's own testimony at the domestic violence hearing regard-

ing his sexual contact with Mary. Defendant has not assigned as error the admission of his own statements and admissions. In light of all the evidence presented as to defendant's guilt, we conclude that even if a limiting instruction had been given, it is not probable that the jury would have reached a different result as to any of defendant's charges. *Steen*, 352 N.C. at 269, 536 S.E.2d at 25-26. Accordingly, we find no plain error and this assignment of error is overruled.

### IV. Satellite-Based Monitoring

[3] Lastly, defendant contends and the State concedes that the trial court erred by ordering defendant to enroll in lifetime satellite based monitoring ("SBM") without ordering a risk assessment and following the other procedures that are required by N.C. Gen. Stat. § 14-208.40A (2007).

N.C. Gen. Stat. § 14-208.40A(a) states that

(a) When an offender is convicted of a reportable conviction as defined by G.S. 14-208.6(4), during the sentencing phase, the district attorney shall present to the court any evidence that (i) the offender has been classified as a sexually violent predator pursuant to G.S. 14-208.20, (ii) the offender is a recidivist, (iii) the conviction offense was an aggravated offense, or (iv) the offense involved the physical, mental, or sexual abuse of a minor. The district attorney shall have no discretion to withhold any evidence required to be submitted to the court pursuant to this subsection.

During the sentencing phase, pursuant to N.C. Gen. Stat. § 14-208.40A(b), the trial court found that defendant was not a sexually violent predator or a recidivist and that the conviction offense was not an aggravated offense. The trial court also found that defendant had been convicted of a reportable conviction, defendant had committed "offenses against a minor" and ordered defendant to enroll in lifetime SBM upon the completion of his sentence. However, in the context of SBM, N.C. Gen. Stat. § 14-208.6(1i) (2007) defines "offense against a minor" as "any of the following offenses if the offense is committed against a minor, and the person committing the offense is not the minor's parent: G.S. 14-39 (kidnapping), G.S. 14-41 (abduction of children), and G.S. 14-43.3 (felonious restraint)." Defendant was not convicted of any of the offenses listed in N.C. Gen. Stat. § 14-208.6(1i) and defendant was the minor's adoptive parent. Therefore the court's finding that defendant had committed "offenses against a minor" was in error.

STATE v. SMITH

[201 N.C. App. 681 (2010)]

The State argued at trial that defendant was subject to SBM because he was convicted of an offense involving "the physical, mental, or sexual abuse of a minor" pursuant to N.C. Gen. Stat. § 14-208.40A(a)(iv). Statutory rape is, by definition, an offense involving the sexual abuse of a minor. *See* N.C. Gen. Stat. § 14-27.7A(a) (2005) (a defendant is guilty of statutory rape in if the defendant engages in vaginal intercourse or a sexual act with another person who is 13, 14, or 15 years old and the defendant is at least six years older than the person.); *State v. Anthony*, 351 N.C. 611, 616, 528 S.E.2d 321, 324 (2000) ("The purpose of the statutory rape law is to protect children under a certain age from sexual acts.") Here, defendant was convicted of an offense involving "the physical, mental, or sexual abuse of a minor[,]" as he was convicted of eight counts of statutory rape.[2] Upon the determination that the defendant was convicted of an offense involving "the physical, mental, or sexual abuse of a minor", the trial court must then order the Department of Correction ("DOC") to perform a risk assessment pursuant to N.C. Gen. Stat. § 14-208.40A(d), which provides that:

> (d) If the court finds that the offender committed an offense that involved the physical, mental, or sexual abuse of a minor, that offense is not an aggravated offense, and the offender is not a recidivist, the court shall order that the Department do a risk assessment of the offender. The Department shall have a minimum of 30 days, but not more than 60 days, to complete the risk assessment of the offender and report the results to the court.

N.C. Gen. Stat. § 14-208.40A(d). Here, the trial court erred by not ordering this risk assessment of defendant.

After the risk assessment is completed, the trial court then must decide, based on the results of defendant's risk assessment and any other evidence which may be presented by the State or defendant, whether defendant requires "the highest possible level of supervision and monitoring." N.C. Gen. Stat. § 14-208.40A(e); *See State v. Morrow*, —— *N.C. App.* ——, ——, 683 S.E.2d 754, 760-61 (2009) ("[A]ny proffered and otherwise admissible evidence relevant to the risk

---

2. Because only one conviction of an offense involving "the physical, mental, or sexual abuse of a minor" is necessary for the defendant to be subject to SBM, and defendant was convicted of multiple counts of offenses which may subject him to SBM, we have addressed only the statutory rape convictions. We do not mean to suggest that statutory sex offense or sex offense in a parental role are not also offenses involving "the physical, mental, or sexual abuse of a minor;" we simply need not address these additional convictions for the purpose of determining whether this defendant may be *subject to* SBM, as one conviction will suffice.

posed by a defendant should be heard by the trial court; the trial court is not limited to the DOC's risk assessment.") If the trial court determines that defendant requires "the highest possible level of supervision and monitoring" then "the court shall order the offender to enroll in a satellite-based monitoring program for a period of time to be specified by the court." N.C. Gen. Stat. § 14-208.40A(e).

Accordingly, we reverse the trial court's order of lifetime SBM for defendant, since the trial court did not follow the procedures in N.C. Gen. Stat. § 14-208.40A. We remand for a new SBM hearing, at which the trial court shall order that the DOC perform a risk assessment of defendant. After the risk assessment is done, at the determination hearing, the trial court shall determine whether defendant requires the highest possible level of supervision and monitoring, and if the trial court makes this determination, the court shall specify the period of time for which defendant must be enrolled in SBM pursuant to N.C. Gen. Stat. § 14-208.40A(e).

AFFIRMED IN PART, REVERSED IN PART, and REMAND FOR FURTHER PROCEEDINGS.

Judges GEER and ERVIN concur.