STATE OF NORTH CAROLINA v. EDDIE JAMES WILLIAMS, III

No. COA08-1580

(Filed 17 November 2009)

**1. Criminal Law— prosecutor's closing argument—statements about defendant**

The trial court did not err by failing to intervene in the State's closing argument where defendant contended that the State had encouraged the jury to convict on an impermissible basis, but in fact mischaracterized the State's argument.

**2. Identification of Defendants— show-up—private citizen initiating**

The trial court did not err in a prosecution for burglary and related charges by admitting identification testimony from a "show-up" where a friend acting as a private citizen called the witness to see defendant.

**3. Identification of Defendants— photographic line-up—' defendant acquitted**

A photographic line-up was not too suggestive where defendant was acquitted of the only charge related to the evidence.

**4. Robbery— armed—lesser—included offense—instruction not given—no evidence that gun inoperable**—The trial court did not err by failing to instruct the jury on the lesser-included offense of common-law robbery in a prosecution for robbery with a dangerous weapon where there was testimony that a piece of the gun fell off during the robbery. Defendant did not produce any evidence that the gun was rendered inoperable.

**5. Burglary and Unlawful Breaking or Entering— motion to dismiss—evidence sufficient**

The trial court did not err in a prosecution for first-degree burglary and related offenses by denying defendant's motion to dismiss for insufficient evidence at the close of all the evidence.

**6. Sentencing— consecutive terms of imprisonment—no abuse of discretion**

The trial court did not abuse its discretion by sentencing defendant to consecutive terms in prison where defendant committed armed robbery or attempted armed robbery on four separate occasions and threatened the lives of numerous people.

Appeal by Defendant from judgment entered 8 May 2008 by Judge Paul G. Gessner in Guilford County Superior Court. Heard in the Court of Appeals 18 August 2009.

*Attorney General Roy A. Cooper, by Assistant Attorney General W. Wallace Finlator, Jr., for the State.*

*Hartsell & Williams, P.A., by Christy E. Wilhelm, for Defendant.*

BEASLEY, Judge.

Eddie James Williams (Defendant) appeals from judgment entered on his convictions of three charges of first-degree burglary, seven charges of robbery with a dangerous weapon, and eleven charges of attempted robbery with a dangerous weapon. For the reasons stated below, we find no error.

Defendant was arrested on 22 February 2007 and charged with twenty-five charges of first-degree burglary, robbery with a dangerous weapon, and attempted robbery with a dangerous weapon. Defendant was tried before a Guilford County jury in May 2008.

Defendant broke into numerous residences armed with a gun, in an attempt to steal the residents' personal property. The State's wit-

nesses testified regarding five separate incidents, occurring between October 2006 and February 2007, that gave rise to the charges against Defendant.

Defendant offered no evidence. In May 2008, a jury found Defendant guilty on twenty-two charges based on offenses committed between October 2006 and February 2007. The jury returned verdicts of not guilty on charges based on alleged offenses committed 3 October 2006. Defendant was convicted of four charges of first-degree burglary, seven charges of robbery with a dangerous weapon, and eleven charges of attempted robbery with a dangerous weapon. Defendant was sentenced to eight consecutive sentences of seventy-five to ninety-nine months imprisonment, two seventy-five to ninety-nine month consecutive sentences for each of the four instances. From this judgment and sentence, Defendant appeals.

## CLOSING ARGUMENT

**[1]** Defendant argues that the trial court erred by failing to intervene during the State's closing argument, which Defendant contends improperly encouraged the jury to convict Defendant on an impermissible basis. Defendant asserts that the State argued that Defendant "hated Latino people and targeted them because they did not speak English[,] was practically a murderer[,] and did not deserve the presumption of innocence afforded to him by our Constitution." We disagree.

Because Defendant failed to object in a timely fashion, "[t]he standard of review for assessing alleged improper argument . . . is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*." *State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002). This Court must determine:

> whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.

*Id.* A proper closing argument must, "(1) be devoid of counsel's personal opinion; (2) avoid name-calling and/or references to matters beyond the record; (3) be premised on logical deductions, not on

STATE v. WILLIAMS

[201 N.C. App. 103 (2009)]

appeals to passion or prejudice; and (4) be constructed from fair inferences drawn only from evidence properly admitted at trial." *Id.* at 135, 558 S.E.2d at 108.

The State's closing argument, in pertinent part, included the following:

> Now, the defendant here during the course of his conduct over these periods of months made several miscalculations that are going to cost him. Number one, he believed that because the victims were Hispanic, that they would have substantial amounts of money on their person and therefore he could rob them easily and walk away with a bank load. . . . All the terror he caused, all the crime he committed, all he got was a few hundred bucks total.

> Number two, he assumed that since they were from a foreign country, that once he did rob these people and treated them any way he felt like doing it, that they wouldn't report it; and if they did report it, they wouldn't follow up with the police. And he miscalculated that.

> And, finally, his assumption was that if they did report it 14 months later they wouldn't come to court and testify against him, and they did that. And they were good, honest, believable people.

> And all of us, when we heard the facts in this case, were probably sitting there wondering what kind of person would do these things, what kind of a mean, selfish person would commit these crimes? And after hearing the evidence, if you want to know what kind of person would do this, all you got to do is look right over here. There he sits. That's the kind of person that would commit these crimes.

> . . . .

> I want you to remember one thing; and that is, he ought to thank his lucky stars every day that he's not sitting over here looking at the death penalty jury, because had that gun discharged and hit one of those victims or gone through that wall and hit that child, this would be a completely different situation. No matter what happens to him today is his lucky day.

> . . . .

> And when you go back in that jury room here after [Defendant's counsel] gives his argument to you, this defendant has got the presumption of innocence. Every defendant does. And the first

thing I want you to do when you go back in that jury room is strip him of the presumption of innocence because he has lost it.

Defendant's argument mis-characterizes this portion of the State's closing argument. First, the State did not argue that Defendant "hated Latino people and targeted them because they did not speak English." Defendant correctly summarizes the State's statements that he believed his victims might be more likely to carry cash and less likely to report him since they were Hispanic. Secondly, Defendant argues that the State argued that Defendant "was practically a murderer." We reject this argument, and conclude that the State's argument was a fair inference from the evidence presented that all of the victims were indeed Hispanic and that Defendant's actions could have had a more serious result. Defendant also contends that the State argued that Defendant "did not deserve the presumption of innocence afforded to him by our Constitution." Rather, the State argued that Defendant, along with every other defendant, should have the presumption of innocence. The State went on to argue further that the jury should find that the evidence presented outweighed the presumption of innocence. We conclude that the State's closing argument was proper and the trial court did not err by failing to intervene on its own accord. This assignment of error is overruled.

## "SHOW-UP"

[2] Defendant argues that the trial court erred by admitting testimony regarding an improper identification procedure known as a "show-up." Defendant contends that by "allowing testimony that [Erika Cruz Rodriguez (Cruz)] had positively identified [Defendant], while he was being arrested . . ., the trial court [had] allowed the State to bolster the credibility of [Cruz] with an improper procedure[.]" We disagree.

Detective V.A. Whitley, of the Greensboro Police Department, testified that in April 2007, he met with Caravantes in order to show her a photographic lineup of possible suspects of her 3 October 2006 robbery. After speaking with Cruz, Detective Whitley discovered that she had previously seen Defendant the night he was arrested. Because Cruz had viewed Defendant since the 3 October 2006 robbery, Detective Whitley testified that he "thought that [it] would prejudice the lineup procedure, so [he] did not show [Cruz] the photographic lineup." Cruz testified that her friend, and no one from the police department, had called her to view Defendant on that previous occasion.

STATE v. WILLIAMS

[201 N.C. App. 103 (2009)]

A "show-up" is a procedure "whereby a suspect is shown singularly to a witness or witnesses for the purposes of identification." *State v. Harrison*, 169 N.C. App. 257, 262, 610 S.E.2d 407, 412 (2005). A "show-up" is an often-criticized practice because it "may be inherently suggestive for the reason that witnesses would be likely to assume that the police presented for their view persons who were suspected of being guilty of the offense under investigation." *Id.*

Defendant argues that the use of improper identification procedures violates his rights under the United States and North Carolina Constitution. "The exclusionary rule . . . excludes from a criminal trial *any* evidence . . . in violation of [a defendant's] Fourth Amendment rights." *State v. Miller*, 282 N.C. 633, 641, 194 S.E.2d 353, 358 (1973) (quotation omitted). However, "[t]he protections of the fourth amendment and the attendant exclusionary rule have traditionally been confined to governmental rather than private action." *State v. Keadle*, 51 N.C. App. 660, 662, 277 S.E.2d 456, 458 (1981). In the instant case, it was a friend who called Cruz to see Defendant. Cruz's friend "was not acting as an agent of the government and instead was acting as a private citizen. . . . [A]s a private actor, the Fourth Amendment does not apply to [her] actions and would not render the evidence inadmissible." *State v. McBennett*, 191 N.C. App. 734, 740, 664 S.E.2d 51, 56 (2008).

Accordingly, we conclude that Defendant's argument is without merit as his arguments are not applicable to his case. This assignment of error is overruled.

## IDENTIFICATION PROCEDURE

[3] Defendant contends that the trial court erred by allowing testimony regarding an improper photographic lineup given to two witnesses. Defendant argues that the identification procedure given to Ms. Caravantes and Ms. Cruz violated his due process rights because they were impermissibly suggestive. We disagree.

"Whether an identification procedure is unduly suggestive depends on the totality of the circumstances." *State v. Rogers*, 355 N.C. 420, 432, 562 S.E.2d 859, 868 (2002) (citation omitted). Under a due process analysis, " '[f]irst, the Court must determine whether the identification procedures were [so] impermissibly suggestive.' " *Id.* (quoting *State v. Pigott*, 320 N.C. 96, 99, 357 S.E.2d 631, 633 (1987)). If this Court determines that this is the case, we "must then determine whether the [suggestive] procedures created a substantial likelihood of irreparable misidentification." *Id.*

Defendant argues that the photographic lineup used with two witnesses to identify him was "unnecessarily suggestive," "conducive to irreparable mistaken identification," and "offend[ed] fundamental standards of decency, fairness and justice." V.A. Whitley, a detective for the Greensboro Police Department, testified that he presented a photographic lineup of possible suspects to Ms. Caravantes and Ms. Cruz for them to identify the perpetrator of their robberies on 3 October 2006. This evidence was submitted to the jury, in relation only to the 3 October 2006 charges, upon which Defendant was acquitted.

Defendant's contention that the evidence resulted in prejudicial error affecting his constitutional rights is without merit. "[D]efendant cannot show that he was prejudiced by this evidence when he was acquitted of [all] charges to which [Whitley's] testimony related." *State v. Ford*, 314 N.C. 498, 504, 334 S.E.2d 765, 769 (1985). Any impact that this evidence might have had did not prevent Defendant from having a fair trial or prejudice him in any way. This assignment of error is overruled.

## JURY INSTRUCTIONS

[4] Defendant argues that the trial court erred in denying his request to include the potential verdicts and lesser-included offenses of common law robbery and attempted common law robbery in his jury instructions. We find no error.

"[A] lesser included offense instruction is required if the evidence would permit a jury rationally to find [defendant] guilty of the lesser offense and acquit him of the greater." *State v. Dyson*, 165 N.C. App. 648, 654, 599 S.E.2d 73, 77 (2004) (internal quotation omitted). We must determine whether:

> there is the presence, or absence, of any evidence in the record which might convince a rational trier of fact to convict the defendant of a less grievous offense. Where the State's evidence is positive as to each element of the offense charged and there is no contradictory evidence relating to any element, no instruction on a lesser included offense is required.

*Id.* (internal quotations omitted). "Where there is positive and unequivocal evidence as to each and every element of armed robbery, and there is no evidence supporting the defendant's guilt of a lesser included offense, the trial court may properly decline to instruct the

jury on the lesser included offense of common law robbery." *State v. Frazier*, 150 N.C. App. 416, 418, 562 S.E.2d 910, 912-13 (2002).

The offense of robbery with a firearm or other dangerous weapons is set forth in N.C. Gen. Stat. § 14-87(a) (2007) as the following:

> [a]ny person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another . . . or any other place where there is a person or persons in attendance, at any time, either day or night . . . shall be guilty of a Class D felony.

N.C. Gen. Stat. § 14-87(a) (2007). "The primary distinction between armed robbery and common law robbery is that 'the former is accomplished by the use or threatened use of a dangerous weapon whereby the life of a person is endangered or threatened.' [This defining factor] is not an essential element of common law robbery." *Frazier*, 150 N.C. App. at 419, 562 S.E.2d at 912.

Defendant argues that there was some testimony that Defendant had what "appeared to be a malfunctioning firearm," that there was a question of fact as to whether Defendant's gun was an operational firearm. We disagree and conclude that there was positive and unequivocal evidence to each and every element of armed robbery.

" 'When a person perpetrates a robbery by brandishing an instrument which appears to be a firearm . . . in the absence of any evidence to the contrary, the law will presume the instrument to be what his conduct represents it to be—a firearm or other dangerous weapon.' " *State v. Allen*, 317 N.C. 119, 123, 343 S.E.2d 893, 896 (1986) (quoting *State v. Thompson*, 297 N.C. 285, 289, 254 S.E.2d 526, 528 (1979)) (citation omitted). " '[W]here there is evidence that a defendant has committed a robbery with what appears to the victim to be a firearm or other dangerous weapon and nothing to the contrary appears in the evidence, the presumption that the victim's life was endangered or threatened is mandatory.' " *State v. Lee*, 128 N.C. App. 506, 510, 495 S.E.2d 373, 375 (1998) (quoting *State v. Williams*, 335 N.C. 518, 521, 438 S.E.2d 727, 728 (1994)). However, if there is evidence "that the instrument is 'an inoperative firearm incapable of threatening or endangering the life of the victim[,]' it is 'for the jury to

determine the nature of the weapon.' " *Frazier*, 150 N.C. App. at 419, 562 S.E.2d at 913 (quoting *Allen*, 317 N.C. at 125-26, 343 S.E.2d at 897).

Defendant premises his argument on part of the testimony of a witness for the 3 December 2006 offense. This witness testified that a part of Defendant's gun fell to the floor during a robbery. However, the witness also testified that immediately after a piece of the gun fell off, Defendant retrieved it and attached it.

In each offense, Defendant used his gun to "endanger or threaten the life of a person" in order to take personal property from him or her. *State v. Thomas*, 85 N.C. App. 319, 321, 354 S.E.2d 891, 893 (1987). Defendant did not offer any evidence supporting the contention that the gun was not functional. More importantly, Defendant did not produce any evidence that the gun he used was rendered inoperable even if a piece did fall off. Therefore, the trial court did not err in refusing to instruct the jury on the lesser-included offense of common law robbery. This assignment of error is overruled.

## MOTION TO DISMISS

**[5]** Defendant argues that the trial court erred by denying his motion to dismiss at the close of all the evidence because there was insufficient evidence of the charges against him. We disagree.

"The denial of a motion to dismiss for insufficient evidence is a question of law, which this Court reviews *de novo*." *State v. Bagley*, —— N.C. App. ——, 644 S.E.2d 615, 621 (2007) (internal citations omitted). The appropriate standard of review for a motion to dismiss by defendant in a criminal trial is " 'whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. Blizzard*, 169 N.C. App. 285, 289, 610 S.E.2d 245, 249 (2005) (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)). The evidence must be viewed in the "light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Scott*, 356 N.C. 591, 596, 573 S.E.2d 866, 869 (2002) (internal quotations and citations omitted). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *Id.* at 597, 573 S.E.2d at 869.

Defendant contends that because there was "no evidence . . . presented that the item used during the alleged crimes was a firearm, and whether or not it was a working, viable firearm[,]" his motion to

dismiss should have been granted. As we previously addressed, we concluded that Defendant used a firearm, endangering and threatening the lives of his victims, in order to take their personal property.

Defendant also argues that the admission of improper identification procedures relating to the 3 October 2006 offense violated his constitutional rights to due process. Because Defendant was acquitted of the 3 October charges, we necessarily reject his argument.

The trial court did not err in denying Defendant's motion to dismiss as the State produced substantial evidence of every element of his charges and proved that he was the perpetrator of these offenses. Multiple witnesses from each offense identified Defendant as the perpetrator of the robberies or attempted robberies. In regards to the 22 February 2007, because the victims held down the Defendant after the commission of the offense and until law enforcement arrived, it is undisputable that Defendant was the perpetrator of this offense. This assignment of error is overruled.

## ENTRY OF JUDGMENT

In his next assignment of error, Defendant argues that the trial court erred in its entry of judgment where the evidence was insufficient to support the entry of a guilty verdict. In support of his argument, Defendant merely directs us to examine his previous arguments and does not advance any new arguments or authority. This assignment of error is overruled.

## SENTENCING

[6] Defendant contends that the trial court erred in sentencing him to seven consecutive active terms of imprisonment from 75 to 99 months. Defendant argues that his punishment is excessive, disproportionate to the crimes charged, and violates his constitutional rights under the Eighth Amendment to the United States Constitution. We disagree.

"It is undisputed that the trial court has express authority under N.C.G.S. § 15A-1354(a) to impose consecutive sentences." *State v. LaPlanche*, 349 N.C. 279, 284, 507 S.E.2d 34, 37 (1998). More importantly, " '[o]nly in exceedingly unusual non-capital cases will the sentences imposed be so grossly disproportionate as to violate the Eighth Amendment's proscription of cruel and unusual punishment.' " *Id.* (quoting *State v. Ysaguire*, 309 N.C. 780, 786, 309 S.E.2d 436, 441 (1983)).

**DUPLIN CNTY. BD. OF EDUC. v. DUPLIN CNTY. BD. OF CNTY. COMM'RS**

[201 N.C. App. 113 (2009)]

Defendant was found guilty on eleven charges of attempted robbery with a dangerous weapon, seven charges of robbery with a dangerous weapon, and four charges of first-degree burglary. In light of the evidence that Defendant committed armed robbery or attempted armed robbery on four separate occasions, and threatened the lives of numerous people, we hold that the trial court did not abuse its discretion in sentencing Defendant to eight consecutive terms of 75 to 99 months imprisonment. This assignment of error is overruled.

For the foregoing reasons, we conclude that the Defendant had a fair trial, free from prejudicial error.

No error.

Judges WYNN and STROUD concur.