STATE OF NORTH CAROLINA v. LEVY JONES III

No. COA11-149

(Filed 4 October 2011)

**1. Identification of Defendants—photos shown by school principal—due process**

The trial court did not commit plain error in a misdemeanor breaking and entering, assault on a female, and assault on a child under the age of twelve case by allowing photo identification evidence where two of the victims identified defendant in one of several photographs shown to them by their principal at school on the day after the incident occurred. The principal was not acting as an agent for the State when he presented the photographs, and therefore defendant's due process rights were not implicated. Further, the procedure employed using computer images from the North Carolina Sex Offender Registry did not give rise to a substantial likelihood of irreparable misidentification. Because the photo identification evidence was properly admissible, the in-court identification evidence of defendant by the two victims was also permissible.

**2. Constitutional Law—effective assistance of counsel—failure to file motion to suppress—failure to object**

Defendant did not receive ineffective assistance of counsel in a misdemeanor breaking and entering, assault on a female, and assault on a child under the age of twelve case based on defense counsel's failure to both file a motion to suppress the photo identification evidence and object to its admission during trial because the photo identification evidence and in-court identifications of defendant by two witnesses were properly admissible.

Judge STEELMAN concurring in result in separate opinion.

Appeal by defendant from judgments entered 4 February 2010 by Judge Wayland J. Sermons, Jr., in Martin County Superior Court. Heard in the Court of Appeals 31 August 2011.

**STATE v. JONES**

[216 N.C. App. 225 (2011)]

*Attorney General Roy Cooper, by Assistant Attorney General Jane L. Oliver, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defenders Mary Cook and Kristen L. Todd, for defendant appellant.*

McCULLOUGH, Judge.

On 4 February 2010, a jury convicted defendant Levy Jones III ("defendant") of misdemeanor breaking and entering, assault on a female, and assault on a child under the age of twelve years. On appeal, defendant contends the trial court committed plain error in allowing photo identification evidence, alleging that such evidence violated his right to due process. Defendant also contends he was denied effective assistance of trial counsel. We find no error.

## I. Background

On 8 September 2008, Phyllis Ore ("Ore") was living in a house in Hamilton, North Carolina, with her five children. Ore's oldest daughter Shanta ("Shanta") was eighteen years old and attending Roanoke High School at the time. Two of Shanta's younger siblings, R.P. and B.O., were thirteen years old and five years old at the time, respectively.

That afternoon, Ore left the house with a friend to run an errand and placed Shanta in charge of her younger siblings. As Ore was leaving the house, she noticed a yellow-gold pickup truck driving down the street in front of her house. Ore saw that a black male was driving the vehicle, but she did not recognize the driver or the truck.

After their mother left, Shanta and her siblings went into their bedrooms to change their clothes and begin their homework. While working on her homework, Shanta heard a strange squeaking noise coming from the front window of the house. Shanta initially ignored the noise, but she went to investigate after hearing the noise again. Upon entering the living room, Shanta saw a man attempting to come into the house through a window accessible from the front porch. Shanta tried to push the man back outside through the window, but the man managed to get in through the window and into the living room.

Once inside the living room, the man sat on the couch and began to talk to Shanta. Although Shanta did not know the man at the time, the man called Shanta by name and told her that he knew how old she was, where she lived, and where she attended school. The man's face was not covered during the encounter. The man was wearing a gray silk shirt, black pants, and black boots. After approximately thirty

minutes, Shanta asked the man to leave and went back to her bed-room. Five or ten minutes later, Shanta returned to check the living room. Shanta saw that the man was gone but that he had left the living room window open, so she went over to close it before rejoining her younger siblings.

Sometime thereafter, Shanta heard the sound of a foot stomping on the floor coming from the living room. Shanta then ran to the living room and saw the same man inside the house again. R.P. followed her sister into the living room. The man stated that his chest was hurting, and he tried to get Shanta to come to him and sit on his chest. He grabbed for Shanta's arm and held her by the wrist, instructing her to touch his chest. Shanta tried to pull away from the man, and R.P. yelled at the man to leave her sister alone. The man asked R.P. to leave, but R.P. stated she would not leave her sister alone with him. The man then grabbed R.P. by the arms and attempted to force her to touch his chest. Although Shanta managed not to touch the man, he forced R.P.'s hand up and touched it to his chest after lifting his shirt. B.O. then came into the living room to help her sisters. B.O. tried to grab Shanta and pull her away from the man, then began pushing and shoving the man to try to get him away from her sisters. The man pushed B.O. away with his hand, knocking her to the floor. Shanta and R.P. were able to pull away from the man, and all three girls retreated to the hallway.

The man then told the girls that his name was "Jones." He said he knew the girls' mother and that he had known Shanta when she was a baby. The man asked Shanta not to tell anyone about the incident, promising her money and clothes if she did not tell anyone about what had happened. The man then went into the kitchen, rumbled through some kitchen drawers, and wrote a telephone number on a piece of paper. The man gave the piece of paper to R.P. and told her to give it to their mother. Shanta again asked the man to leave, and the man then left the house, driving away in a yellow-gold truck. The second encounter with the man lasted for approximately forty minutes.

Shortly after the man left, Ore returned home. The children were screaming and crying and immediately told their mother about the incident. Ore then called 911 to report the incident. Investigator Brent Council ("Investigator Council") with the Martin County Sheriff's Office responded to the call. Ore informed Investigator Council that a man had broken into her home while she was out and the children were home alone. She gave the piece of paper with the phone number on it to Investigator Council and stated that she did not recognize the

handwriting or the phone number. Investigator Council inspected the window where the break-in had occurred and noted that the screen had been removed. Investigator Council was unable to check for fingerprints, however, due to the amount of dust on the front window. Investigator Council then interviewed both Shanta and R.P. Shanta described the man as wearing a silk gray shirt, black pants and black boots. Shanta stated the man appeared to be between 40 and 50 years old and that he was bald, except on the sides of his head. Shanta informed Investigator Council that the man had said his name was "John Jones." R.P. described the man as having black and gray hair with a bald spot, and he was wearing black pants, black shoes, and a silver shirt.

The following day, the children returned to school. While at school, Shanta began to feel scared and started crying. Shanta's teacher then called Ore to inform her that Shanta was upset. Ore then came to the school with R.P. to pick up Shanta. William Dennis Hart, Jr., principal at Roanoke High School ("Principal Hart"), saw that Shanta was upset and that she was leaving school early. Principal Hart asked Shanta what was wrong, and Shanta responded that someone had broken into their house the previous afternoon. Principal Hart then took Ore, Shanta, and R.P. into his office and proceeded to show them a series of photographs of different individuals. Principal Hart had obtained the images from the North Carolina Sex Offender Registry Website. The two girls indicated that the first two photos they were shown were not the man who entered the house on the previous afternoon. Principal Hart then showed the girls a photo of defendant, and both girls immediately reacted, stating that was the man who had broken into their home. Both girls appeared visibly upset upon seeing the photograph. Principal Hart then showed the girls a few more photos of other individuals, but the girls stated that none of those other individuals were the man who had broken into their house, coming back to the photograph of defendant and stating that he was the man who had broken in. Principal Hart then gave Ore the photograph and information from the North Carolina Sex Offender Registry and advised her to give the photograph and other information to law enforcement.

Ore contacted Investigator Council and told him that Shanta and R.P. had identified a picture of the man who had broken into their home the previous day. Ore then went to the Sheriff's office and gave the picture and information to Investigator Council. Investigator Council asked both girls "were they sure, one hundred percent posi-

tive, that [this] was the person." Both girls responded that they were positive the man in the photograph was the perpetrator. Investigator Council then obtained an arrest warrant for defendant based on the eyewitness identifications.

Upon his arrest, defendant declined to give a statement, but he informed Investigator Council that on 8 September 2008, he was with a friend named Xavier Brown ("Brown"). Investigator Council later questioned Brown, and Brown confirmed that he and defendant had been together on that day. Brown told Investigator Council that he and defendant had driven to Roanoke High School to deliver an instrument for band practice on the afternoon in question. However, upon speaking with the school's band director, the band director informed Investigator Council that the band did not hold practice on the date of the incident.

Upon checking with the Department of Motor Vehicles, Investigator Council learned that neither defendant nor Brown owned a truck matching the description given by the girls. Investigator Council also spoke with some of Ore's neighbors, but none could provide any information about an individual in a yellow-gold truck. Investigator Council did not conduct any further investigation.

On 30 March 2009, defendant was indicted on one count each of breaking and entering, indecent liberties with a child, assault on a female, and assault on a child under twelve years of age. Defendant was then tried before a jury beginning 3 February 2010. During the trial, both Shanta and R.P. identified defendant in court as the man who had broken into their home. Defendant did not present any evidence at trial. On 4 February 2010, the State dismissed the charge of indecent liberties with a child. That same day, the jury returned a verdict of guilty on the three remaining charges. Defendant was sentenced to two consecutive terms of 150 days' imprisonment, but the trial court suspended the second sentence and replaced it with 24 months of supervised probation. Defendant appeals.

## II. Plain error in allowing photo identification evidence

[1] Defendant first contends the trial court committed plain error in allowing the evidence of the two girls' identifications of defendant in one of several photographs shown to them by Principal Hart on the day after the incident occurred. Defendant argues that Principal Hart was acting as a government official when he conducted the pretrial photo identification procedure and that such photo identification

procedure was impermissibly suggestive in violation of his due process rights. Defendant also argues that the impermissibly suggestive pretrial photo identification procedure tainted the two girls' in-court identifications of defendant. Defendant argues that because such impermissible identification evidence was the only evidence linking defendant to the crimes, there is a reasonable probability that without such identification evidence, the jury would have reached a different result.

## A. Standard of Review

Defendant did not object to the admission of the photo identification evidence at trial. Nonetheless, "defendant is entitled to relief . . . only if he can demonstrate plain error." *State v. Roseboro*, 351 N.C. 536, 552, 528 S.E.2d 1, 12 (2000). Plain error is "a fundamental error so prejudicial that justice cannot have been done." *State v. Haselden*, 357 N.C. 1, 13, 577 S.E.2d 594, 602 (2003). " 'In order to prevail under a plain error analysis, defendant must establish not only that the trial court committed error, but that absent the error, the jury probably would have reached a different result.' " *State v. Smith*, ___ N.C. App. ___, ___, 687 S.E.2d 525, 529 (2010) (quoting *State v. Steen*, 352 N.C. 227, 269, 536 S.E.2d 1, 25-26 (2000)).

We note the rule that constitutional arguments not raised at trial are not preserved for appellate review: " '[I]n order for an appellant to assert a constitutional or statutory right on appeal, the right must have been asserted and the issue raised before the trial court.' " *State v. Moses*, ___ N.C. App. ___, ___, 698 S.E.2d 688, 693 (2010) (alteration in original) (quoting *State v. McDowell*, 301 N.C. 279, 291, 271 S.E.2d 286, 294 (1980)). "Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal, not even for plain error[.]" *State v. Gobal*, 186 N.C. App. 308, 320, 651 S.E.2d 279, 287 (2007) (citations omitted), *aff'd*, 362 N.C. 342, 661 S.E.2d 732 (2008). However, because the constitutional right at issue involves the admissibility of evidence, *see State v. Garcell*, 363 N.C. 10, 35, 678 S.E.2d 618, 634 (2009) ("Plain error analysis applies to evidentiary matters and jury instructions."), *cert. denied*, 175 L. Ed. 2d 362 (2009), and because defendant has also raised the issue of ineffective assistance of counsel with respect to the admission of the same evidence, we reach the merits of defendant's arguments under a plain error standard of review. *State v. Lawson*, 159 N.C. App. 534, 538, 583 S.E.2d 354, 357 (2003).

### B. Due Process Violation: Photo identification evidence

Identification evidence violates a defendant's due process right "where the facts reveal a pretrial identification procedure so impermissibly suggestive that there is a very substantial likelihood of irreparable misidentification." *State v. Harris*, 308 N.C. 159, 162, 301 S.E.2d 91, 94 (1983). Our analysis of identification procedures for due process violations is comprised of two steps:

> First, the Court must determine whether the pretrial identification procedures were unnecessarily suggestive. If the answer to this question is affirmative, the court then must determine whether the unnecessarily suggestive procedures were so impermissibly suggestive that they resulted in a substantial likelihood of irreparable misidentification. Whether a substantial likelihood exists depends on the totality of the circumstances.

*State v. Fisher*, 321 N.C. 19, 23, 361 S.E.2d 551, 553 (1987) (citations omitted).

When evaluating the likelihood of irreparable misidentification, our Courts consider the following factors:

> "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation."

*State v. Pulley*, 180 N.C. App. 54, 64, 636 S.E.2d 231, 239 (2006) (quoting *Harris*, 308 N.C. at 164, 301 S.E.2d at 95). Furthermore,

> To determine whether a pretrial identification procedure is suggestive, the court should consider: (1) "whether the accused is somehow distinguished from others . . . in a set of photographs"; and (2) "whether the witness is given some extraneous information by the police which leads her to identify the accused as the perpetrator of the offense."

*State v. Rainey*, 198 N.C. App. 427, 435, 680 S.E.2d 760, 768 (2009) (quoting *State v. Wallace*, 71 N.C. App. 681, 684, 323 S.E.2d 403, 406 (1984)), *disc. review denied, appeal dismissed*, 363 N.C. 661, 686 S.E.2d 903 (2009). "The facts and circumstances of each case must be examined to determine whether the pretrial identification procedure was so suggestive as to create a substantial likelihood of misidentifi-

cation." *State v. Wilson*, 313 N.C. 516, 529, 330 S.E.2d 450, 459-60 (1985). "In other words, a suggestive identification procedure has to be unreliable under a totality of the circumstances in order to be inadmissible." *State v. Breeze*, 130 N.C. App. 344, 350, 503 S.E.2d 141, 146 (1998). Moreover, "suggestive pretrial identification procedures that do not result from state action do not violate defendant's due process rights." *Fisher*, 321 N.C. at 24, 361 S.E.2d at 554.

In addition, "[w]hile in-court identifications are generally admitted, they may be excluded if tainted by a prior confrontation in circumstances shown to be unnecessarily suggestive and conducive to irreparable mistaken identification." *State v. Caporasso*, 128 N.C. App. 236, 239, 495 S.E.2d 157, 160 (1998) (internal quotation marks and citations omitted). Nonetheless, "an in-court identification may be admissible despite improper pretrial identification procedures if the in-court identification is reliable and has an origin independent of the improper procedure." *State v. Parks*, 77 N.C. App. 778, 780, 336 S.E.2d 424, 425 (1985). "[A]n in-court identification is considered competent where the identification is independent in origin and based upon the witness' observations at the time and scene of the crime." *State v. Distance*, 163 N.C. App. 711, 717, 594 S.E.2d 221, 226 (2004). In determining whether an in-court identification of the defendant is of independent origin, our Courts consider the same five factors as those considered in evaluating pretrial identifications. *State v. Hammond*, 307 N.C. 662, 668, 300 S.E.2d 361, 365 (1983).

### C. Application to the Present Case

We first address defendant's argument that Principal Hart was acting as an agent of the State when he presented the photos to the two girls at the high school. In support of his argument, defendant cites *New Jersey v. T.L.O.*, 469 U.S. 325, 83 L. Ed. 2d 720 (1985), and *In re D.D.*, 146 N.C. App. 309, 554 S.E.2d 346 (2001). Defendant maintains that in these two cases, both the United States Supreme Court and this Court held that public school officials are government actors for purposes of the Fourth Amendment. Defendant asserts that such reasoning is also applicable for purposes of the due process clause under the Fourteenth Amendment of the United States Constitution and Article I, § 19 of the North Carolina Constitution.

Defendant is correct that both the United States Supreme Court and this Court have found public school officials to be state actors, and therefore, the holdings establish that public school officials are bound by constitutional mandates. *See T.L.O.*, 469 U.S. at 336, 83

L. Ed. 2d at 731; *In re D.D.*, 146 N.C. App. at 316, 554 S.E.2d at 351. However, defendant ignores the fact that in all such holdings, school officials are considered state actors for purposes of constitutional guarantees when they are exercising public authority "in furtherance of publicly mandated educational and disciplinary policies." *T.L.O.*, 469 U.S. at 336, 83 L. Ed. 2d at 731; *see also Goss v. Lopez*, 419 U.S. 565, 574, 42 L. Ed. 2d 725, 734-35 (1975) (holding that once a state establishes a public school system and "require[s] its children to attend," public school officials may not take away a student's legitimate entitlement to a public education without adhering to the minimum procedures required under due process); *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 506, 21 L. Ed. 2d 731, 737 (1969) (holding that school officials may not limit the first amendment rights of students and teachers to freedom of speech and expression). The central premise in all such holdings is that "young people do not 'shed their constitutional rights' at the schoolhouse door." *Lopez*, 419 U.S. at 574, 42 L. Ed. 2d at 734 (quoting *Tinker*, 393 U.S. at 506, 21 L. Ed. 2d at 737). Therefore, "[i]n carrying out *searches and other disciplinary functions* pursuant to such [publicly mandated educational and disciplinary] policies, school officials act as representatives of the State[.]" *T.L.O.*, 469 U.S. at 336, 83 L. Ed. 2d at 731 (emphasis added); *see also In re D.D.*, 146 N.C. App. at 316, 554 S.E.2d at 351.

Here, when Principal Hart observed Shanta, one of his students, visibly upset and leaving school early, Principal Hart asked her what was wrong. When Shanta informed him that someone had broken into their home, Principal Hart proceeded to show her photographs in an effort to help her determine who had bothered her and her family. Principal Hart was not acting pursuant to any educational or disciplinary policies, nor was he acting as a law enforcement officer conducting an investigation on behalf of the State. Principal Hart was not affiliated with any law enforcement agency, he had no arrest power, and he had no knowledge of any criminal investigation being conducted. *See In re Phillips*, 128 N.C. App. 732, 735, 497 S.E.2d 292, 294 (1998).

Rather, Principal Hart's actions were more akin to that of a parent, friend, or other concerned citizen offering to help the victim of a crime. *See, e.g., State v. Williams*, 201 N.C. App. 103, 108, 685 S.E.2d 534, 538 (2009) (holding that the friend of an eyewitness to a robbery who called the witness to view the defendant as he was being arrested by police was not acting as an agent of the State, but rather a private citizen, and therefore, the protections of the Fourth

Amendment and the exclusionary rule for improper identification procedures did not apply to the eyewitness's identification at the showup). The mere fact that Principal Hart was a school official does not make him an agent of the State with respect to every member of the public. To the contrary, " 'it is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals.' " *State v. Keadle*, 51 N.C. App. 660, 663, 277 S.E.2d 456, 459 (1981) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 487-88, 29 L. Ed. 2d 564, 595 (1971)). Principal Hart was not a state actor when he presented the photographs to the two girls at school resulting in the girls' identification of defendant as the perpetrator; therefore, defendant's due process rights were not implicated.

In the alternative, defendant maintains that whether Principal Hart was acting as an agent of the State when he presented the photographs to the girls is inapposite, as the State's use of such allegedly inadmissible identification evidence at trial constituted state action and violated his due process rights under the Fifth and Fourteenth Amendments. Defendant's argument is misguided.

As stated previously, our Courts have long held that a defendant's due process rights are implicated by the admission of identification evidence *only* when " 'the facts reveal a pretrial identification procedure so impermissibly suggestive that there is a very substantial likelihood of irreparable misidentification.' " *State v. Pinchback*, 140 N.C. App. 512, 518, 537 S.E.2d 222, 225-26 (2000) (quoting *Harris*, 308 N.C. at 162, 301 S.E.2d at 94); *see also State v. Powell*, 321 N.C. 364, 368, 364 S.E.2d 332, 335 (1988) ("Identification evidence must be suppressed *on due process grounds* where the facts show that the pretrial identification procedure was so suggestive as to create a very substantial likelihood of irreparable misidentification." (emphasis added)); *State v. Leggett*, 305 N.C. 213, 220, 287 S.E.2d 832, 837 (1982) (" 'The test *under the due process clause* as to pretrial identification procedures is whether the totality of the circumstances reveals pretrial procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice.' " (emphasis added) (quoting *State v. Henderson*, 285 N.C. 1, 9, 203 S.E.2d 10, 16 (1974), *death penalty vacated*, 428 U.S. 902, 49 L. Ed. 2d 1205 (1976))).

We reiterate that "suggestive pretrial identification procedures that do not result from state action do not violate defendant's due process rights." *Fisher*, 321 N.C. at 24, 361 S.E.2d at 554. Further-

STATE v. JONES

[216 N.C. App. 225 (2011)]

more, our Courts have consistently held that evidence obtained by the actions of private citizens with no State involvement do not implicate a defendant's constitutional rights. *See, e.g., State v. Sanders*, 327 N.C. 319, 331, 395 S.E.2d 412, 420 (1990); *Keadle*, 51 N.C. App. at 662-63, 277 S.E.2d at 458-59. Because we find no evidence in the present case that Principal Hart was acting in any way as an agent of the State when he presented the series of photographs to the girls at the high school, defendant's arguments that his due process rights were violated by the trial court's admission of the photo identification evidence are without merit.

Even assuming, *arguendo*, that Principal Hart was acting on behalf of the State and that the procedure he used was unnecessarily suggestive because the photos shown to the girls were computer images from the North Carolina Sex Offender Registry, in evaluating the factors enumerated in *Pulley*, 180 N.C. App. at 64, 636 S.E.2d at 239, we fail to see how the procedure employed by Principal Hart " 'gave rise to a substantial likelihood of irreparable misidentification.' " *Fisher*, 321 N.C. at 25, 361 S.E.2d at 554 (quoting *State v. Hannah*, 312 N.C. 286, 290, 322 S.E.2d 148, 151 (1984)).

Shanta testified that the first encounter with the intruder lasted approximately 30 minutes, while the second encounter with the intruder lasted approximately 40 minutes. R.P. testified that each encounter with the intruder lasted approximately five minutes. Although the girls gave conflicting testimony regarding the time frame of the encounters, the girls nevertheless had between ten and seventy minutes to observe the intruder. The intruder was not wearing any clothing or masks to obstruct the girls' view of his face. During the encounters, the intruder sat on the couch in the home, engaged in conversation with both girls, and grabbed both girls by their arms. Both girls consistently described the intruder's clothing and hair to the investigating officer. Upon seeing a photograph of defendant at the school, both girls were absolutely certain that he was the intruder, and both girls again stated they were absolutely certain that defendant was the intruder when asked by the investigating officer. The girls recognized defendant's photograph as the intruder on the very next day after the crime had occurred, and the girls indicated that other photographs they were shown were not the man who had broken into their home on the previous day. Given these facts, we find the photo identification evidence did not implicate defendant's due process rights and was properly admissible.

Further, because the photo identification evidence was properly admitted, the trial court also properly admitted the in-court identifications of defendant. *State v. Lawson*, 159 N.C. App. 534, 539, 583 S.E.2d 354, 358 (2003).

## III.  Ineffective Assistance of Counsel

[2] Defendant also argues that he received ineffective assistance of counsel because his trial counsel failed to both file a motion to suppress the photo identification evidence and object to the admission of the photo identification evidence during trial. Because we conclude the photo identification evidence and the in-court identifications of defendant by the two witnesses were properly admissible, defendant's trial counsel did not err in failing to move to suppress or object to such evidence. *State v. Mewborn*, 200 N.C. App. 731, 739, 684 S.E.2d 535, 540 (2009) ("The failure to object to admissible evidence is not error."). Defendant's argument on this issue is therefore without merit.

## IV.  Conclusion

We hold the photo identification evidence at issue in the present case did not violate defendant's due process rights. Principal Hart, who presented the photographs to the witnesses, was not acting as an agent of the State when he conducted the photo identification procedure at the high school. Further, given the facts of this case, the photo identification procedure used by Principal Hart was not impermissibly suggestive so as to implicate defendant's due process rights. Because the photo identification evidence was properly admissible, the in-court identifications of defendant by the two witnesses were also properly admissible. The trial court did not commit error, let alone plain error, in admitting the identification evidence. In addition, defendant received effective assistance of trial counsel.

No error.

Judge HUNTER (Robert C.) concurs.

Judge STEELMAN concurs in the result with separate opinion.

STEELMAN, *Judge concurring in the result*.

At trial, defendant did not object to the admission of the identification of defendant from the photograph provided by principal Hart. Neither did he raise the constitutional arguments now raised on appeal.

**STATE v. JONES**

[216 N.C. App. 225 (2011)]

Constitutional arguments not preserved at trial cannot be raised on appeal. *See State v. Maness*, 363 N.C. 261, 279, 677 S.E.2d 796, 808 (2009) ("A constitutional issue not raised at trial will generally not be considered for the first time on appeal." (quotation and alteration omitted)), *cert. denied*, ___ U.S. ___, 176 L. Ed. 2d 568 (2010); *State v. Cummings*, 353 N.C. 281, 292, 543 S.E.2d 849, 856 ("Constitutional questions that are not raised and passed upon in the trial court will not ordinarily be considered on appeal." (citations omitted)), *cert. denied*, 534 U.S. 965, 151 L. Ed. 2d 286 (2001); N.C.R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").

The majority asserts that defendant's constitutional claims, which were not raised at trial, can be considered on their merits for two reasons: (1) the "constitutional right at issue involves the admissibility of evidence[;]" and (2) defendant has raised a claim of ineffective assistance of counsel. While defendant has a right to plain error review of an evidentiary ruling, he does not have the right to use this to bootstrap an unpreserved constitutional issue before this Court. The majority opinion has the consequence of allowing defendant to appeal what is not appealable. *Veazey v. Durham*, 231 N.C. 357, 364, 57 S.E.2d 377, 383 (1950). Under the rationale of the majority, by combining an evidentiary issue together with a constitutional issue so that they are difficult to separate, a defendant can obtain review of a constitutional issue that was not preserved at trial. N.C.R. App. P. 10(a)(1). The only limitation upon this approach, now sanctioned by the majority, would be the creativity of appellate counsel. The evidentiary ruling should be separated from the constitutional issue, and ruled upon under plain error review. The constitutional issue should be dismissed.

While raising a claim of ineffective assistance of counsel may entitle defendant to the review of the constitutional question in the context of the first prong of an analysis under *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984), it does not entitle defendant to raise the claim upon its merits.

The constitutional arguments of defendant should be dismissed.