An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-247

NORTH CAROLINA COURT OF APPEALS

Filed:  20 January 2015

STATE OF NORTH CAROLINA

| | |
|---|---|
| v. | Mecklenburg County Nos. 10 CRS 253344-45; 253347-48 |

QUADARRIAN ANTONIO MORRISON

Appeal by defendant from judgments entered 6 June 2013 by Judge Reuben F. Young in Mecklenburg County Superior Court. Heard in the Court of Appeals 27 August 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Anne Goco Kirby, for the State.*

> *Office of the Public Defender, by Assistant Public Defender Julie Ramseur Lewis, for defendant-appellant.*

CALABRIA, Judge.

Quadarrian Antonio Morrison ("defendant") appeals from judgments entered upon jury verdicts finding him guilty of assault with a deadly weapon with the intent to kill inflicting serious injury ("AWDWIKISI"), robbery with a dangerous weapon

("RWDW"), attempted RWDW, and conspiracy to commit RWDW. We find no error.

## I. Background

On 4 November 2010, Darius McCrae ("McCrae") and Timothy Graham ("Graham") arranged a drug transaction with Graham's acquaintance Shawn, who had previously purchased drugs from Graham on other occasions. Shawn wanted to buy $40 worth of marijuana from Graham and agreed to meet McCrae and Graham at a local Harris Teeter grocery store. McCrae drove Graham to the meeting location in his parents' blue Chevrolet HHR ("the HHR"). After arriving at the Harris Teeter, Shawn called Graham and McCrae and told them to meet him across the street in the parking lot of a closed restaurant.

At approximately 10:30 p.m., Graham and McCrae parked in the lot across the street and waited for Shawn to arrive. A few seconds later, the driver of a gold Honda parked about three feet from McCrae and Graham's vehicle. Shawn exited the Honda and got into McCrae's vehicle. Shawn claimed that he wanted to show the marijuana to his friend, later identified as defendant, who had remained in the Honda. Subsequently, Shawn motioned for defendant to come over to the HHR. Defendant entered the HHR's backseat and sat diagonally across from Graham. Defendant and

Shawn sat in the backseat of the HHR for approximately ten to fifteen minutes and acted as if they intended to purchase the marijuana. During that time, Graham turned around to look at defendant two or three times. Defendant and Shawn then both pulled out black automatic handguns and pointed them at McCrae and Graham. After sitting in silence for two or three minutes, Graham and McCrae jumped from the HHR and began to run. Several shots were fired, one of which hit Graham in the back. Graham collapsed and was transported to the hospital to be treated for his injuries. Defendant and Shawn fled in the HHR.

At approximately 11:55 p.m., Officer Jason Kerl ("Officer Kerl") of the Charlotte-Mecklenburg Police Department ("CMPD") heard a "be on the lookout" broadcast on his police radio for a blue Chevrolet HHR that had been involved in an armed robbery. Within minutes of hearing the alert, Officer Kerl noticed the HHR at a gas station, surrounded by several males. After confirming that the vehicle's license plate number matched the stolen HHR, Officer Kerl called for additional assistance. Officer Kerl noticed one of the individuals carried a black backpack, and he observed the individual with the backpack enter the convenience store.

CMPD Lieutenant Andrew Harris ("Lt. Harris"), who responded to Officer Kerl's request for assistance, also witnessed the man with the backpack, who he later identified as defendant, enter the store. Defendant paused near the back corner of the store, and then moved towards the middle of the store, where he appeared to bend down as if to retrieve or place something onto a shelf. After securing three individuals outside of the store, Lt. Harris sent another CMPD officer inside the store to detain defendant. Officer Kerl also went into the store and discovered a black backpack containing two handguns and a set of Honda keys in the same locations that Lt. Harris had observed defendant stop and pause. Upon searching the rest of the store, Officer Kerl found keys to the HHR and a small bag of marijuana on one of the store shelves.

McCrae was brought to the gas station and a showup was conducted with the four individuals who had been detained there. After the showup concluded, only defendant was taken into custody. Defendant was subsequently charged with AWDWIKISI, RWDW, attempted RWDW, and conspiracy to commit RWDW.

On 8 November 2010, CMPD Officer Ryan Whetzel ("Officer Whetzel") visited Graham at the hospital, where he was recovering from his gunshot wound. Officer Whetzel intended to

interview Graham and show him a photographic lineup to see if he could identify a suspect. However, Graham never viewed the lineup because he immediately informed Officer Whetzel that he had seen defendant's picture on a local news broadcast, and he identified defendant as the person who had robbed and shot him.

Prior to trial, defendant filed a motion to suppress Graham's in-court testimony identifying defendant as the man who robbed him on the basis that Graham's identification would be inherently incredible and that it was tainted by an improper pretrial identification. After a *voir dire* hearing, the trial court concluded that Graham had made an independent identification of defendant prior to viewing defendant's photo on the news broadcast and denied defendant's motion to suppress.

Beginning 3 June 2013, defendant was tried by a jury in Mecklenburg County Superior Court. On 6 June 2013, the jury returned verdicts finding defendant guilty of all charges. The trial court sentenced defendant to a minimum of 83 months to a maximum of 109 months for the AWDWIKISI conviction, a minimum of 73 months to a maximum of 97 months for the RWDW conviction, and a minimum of 73 months to a maximum of 97 months for the attempted RWDW and conspiracy convictions. The sentences were

to be served consecutively in the North Carolina Division of Adult Correction. Defendant appeals.

## II. In-Court Identification

Defendant argues that the trial court erred by denying his motion to suppress Graham's in-court identification of defendant. We disagree.

Initially, we note that the trial court did not enter a written order denying defendant's motion to suppress, but merely rendered an oral decision in open court. However, this Court has permitted this procedure so long as "(1) the trial court provides its rationale from the bench, and (2) there are no material conflicts in the evidence at the suppression hearing." *State v. Williams*, 195 N.C. App. 554, 555, 673 S.E.2d 394, 395 (2009). Defendant does not dispute that the trial court met both of these criteria. Instead, defendant contends that the trial court's conclusion of law that Graham's identification was not inherently incredible was not supported by the undisputed evidence presented at the suppression hearing. Defendant relies upon *State v. Miller*, 270 N.C. 726, 154 S.E.2d 902 (1967), in support of this argument.

In *Miller*, the defendant was identified by a sole eyewitness who only had the opportunity to observe the

perpetrator running at night at a distance of 286 feet away. *Id*. at 732, 154 S.E.2d at 905. Our Supreme Court explained that, even though the question of whether a witness's identification of a defendant as the perpetrator of a crime has any probative value is generally one for the jury, that general rule does not apply "where the only evidence identifying the defendant as the perpetrator of the offense is inherently incredible because of undisputed facts, clearly established by the State's evidence, as to the physical conditions under which the alleged observation occurred." *Id*. at 731, 154 S.E.2d at 905. However, the Court further explained that "[w]here there is a reasonable possibility of observation sufficient to permit subsequent identification, the credibility of the witness' identification of the defendant is for the jury . . . ." *Id*. at 732, 154 S.E.2d at 906.

In the instant case, Graham testified that he first observed defendant from three feet away because of the visibility from the interior light in the gold Honda that was turned on while Shawn exited the vehicle. Graham also testified that he observed defendant two or three additional times as he sat diagonally from defendant in the HHR. Defendant sat in the car with Graham for approximately ten to fifteen minutes, and

the interior light of the car remained on during that time so that the men could see in order to complete the drug transaction. Given defendant's close proximity to Graham and the amount of time he had to observe defendant, there was sufficient evidence to support the trial court's conclusion that Graham had a reasonable opportunity to identify his attacker, such that the reliability of the identification was a question for the jury. Consequently, the trial court properly denied defendant's motion to suppress. This argument is overruled.

### III. Due Process

Defendant argues that the trial court committed plain error by permitting evidence that Graham identified defendant as the perpetrator after witnessing defendant's photograph on a local news broadcast. We disagree.

As an initial matter, we note that defendant did not object to evidence of Graham's out-of-court identification at trial. Consequently, we review this issue for plain error.

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case,

> the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal quotations and citations omitted).

"Identification evidence must be excluded as violating a defendant's right to due process where the facts reveal a pretrial identification procedure so impermissibly suggestive that there is a very substantial likelihood of irreparable misidentification." *State v. Harris*, 308 N.C. 159, 162, 301 S.E.2d 91, 94 (1983). However, "'suggestive pretrial identification procedures that do not result from state action do not violate defendant's due process rights.' [*State v.*] *Fisher*, 321 N.C. [19,] 24, 361 S.E.2d [551,] 554 [(1987)]. Furthermore, our Courts have consistently held that evidence obtained by the actions of private citizens with no State involvement do not implicate a defendant's constitutional rights." *State v. Jones*, 216 N.C. App. 225, 234-35, 715 S.E.2d 896, 903 (2011).

In *State v. Williams*, the defendant argued that the trial court erred by allowing evidence of a "showup" which occurred when a friend called a witness so that she could view the defendant being arrested. 201 N.C. App. 103, 107, 685 S.E.2d

534, 538 (2009). The defendant contended "that the use of improper identification procedures violate[d] his rights under the United States and North Carolina Constitution[s]." *Id*. at 108, 685 S.E.2d at 538. However, the witness specifically testified that no one from the police department had informed her about the arrest. *Id*. at 107, 685 S.E.2d at 538. This Court held that since the witness's friend "was not acting as an agent of the government and instead was acting as a private citizen," the "showup" did not implicate defendant's constitutional rights. *Id.* at 108, 685 S.E.2d at 538.

In the instant case, defendant contends that the display of his mugshot on a local television station essentially amounted to a "'media' showup" which rendered Graham's pretrial identification unreliable. However, as in *Williams,* there is no dispute that the television station's posting of the mugshot was not the result of any state action. Consequently, the display of defendant's mugshot by a private actor did not "violate defendant's due process rights." *Jones*, 216 N.C. App. at 234, 715 S.E.2d at 903. This argument is overruled.

Defendant additionally argues that the pretrial identification tainted Graham's subsequent in-court identification such that it should have been suppressed.

However, since we have already determined that Graham had a sufficient opportunity to identify defendant and that the viewing of defendant's mugshot on the news broadcast did not implicate defendant's due process rights, the in-court identification was properly admitted. *See State v. Lawson*, 159 N.C. App. 534, 539, 583 S.E.2d 354, 358 (2003).

### IV. Hearsay

Defendant argues that the trial court committed plain error by allowing evidence that implied that McCrae identified defendant during a showup conducted shortly after the robbery. Specifically, defendant contends that the testimony regarding the identification was inadmissible hearsay. We disagree.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801 (2013). A "statement" is a written or oral assertion or nonverbal conduct of a person intended by the declarant as an assertion. N.C. Gen. Stat. § 8C-1, Rule 801(a).

In the instant case, Lt. Harris testified that he brought one of the victims to the gas station to conduct a showup with the four men who had been detained. Lt. Harris further testified that "the person [he] brought to the scene ID[ed]" one of the

four as a perpetrator. At the conclusion of the showup, only defendant was arrested. Officer Whetzel also testified that he took McCrae to the gas station and defendant was subsequently arrested. Defendant contends that the only logical inference that could be drawn from this testimony was that McCrae stated that defendant was the perpetrator of the robbery, a statement which would constitute inadmissible hearsay. Defendant notes that during closing arguments, the State specifically argued that McCrae identified defendant based upon this testimony.

However, defendant only objected to a portion of the challenged testimony at trial. As a result, defendant failed to preserve this issue for appellate review. *See State v. Hunt*, 325 N.C. 187, 196, 381 S.E.2d 453, 459 (1989) (When "evidence is admitted over objection, but the same or similar evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost."). Consequently, even assuming, *arguendo*, that the officers' testimony was inadmissible hearsay, defendant is only entitled to relief if he can demonstrate plain error.

We have already held that Graham's identifications of defendant, both in court and out of court, were properly admitted. In addition, defendant's DNA was determined to be a

match to the partial DNA profile recovered from the gun that was used to shoot Graham, and officers witnessed defendant with a backpack that was later found to contain the handgun and the keys to the Honda. Officers also recovered the keys to the HHR and marijuana in the other areas of the store where defendant had recently been. In light of this evidence, it cannot be said that the testimony implying McCrae's identification of defendant "had a probable impact on the jury's finding that the defendant was guilty." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (internal quotations and citation omitted). Thus, defendant has failed to meet his burden to establish plain error. This argument is overruled.

## V. Conclusion

The evidence at the suppression hearing was sufficient to support the trial court's conclusion that Graham had a reasonable opportunity to identify defendant. The broadcast of defendant's mugshot by a local television station did not implicate defendant's constitutional rights. Defendant failed to establish that alleged hearsay evidence regarding McCrae's identification of defendant constituted plain error. Defendant received a fair trial, free from prejudicial error.

No error.

Judges ELMORE and STEPHENS concur.

Report per Rule 30(e).